90 N.J. Super. 105 (1965)
216 A.2d 397
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TALMADGE JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1965.
Decided April 20, 1965.
*107 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Oscar Berman argued the cause for appellant (Mr. William L. Kattak on the brief).
Mr. Archibald Kreiger, Assistant Prosecutor, argued the cause for respondent (Mr. John G. Thevos, Prosecutor of Passaic County, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant was charged in a three-count indictment with selling a narcotic drug, to wit, heroin on December 7, December 8 and December 12, all in 1962, contrary to the provisions of N.J.S.A. 24:18-4 and N.J.S.A. 24:18-47. He was tried before a jury in the Passaic County Court. The trial judge dismissed the first count, covering the alleged sale on December 7, at the end of the State's case for lack of evidence. The jury found defendant guilty on the second and third counts, covering the sales on December 8 and December 12. Defendant appeals from the judgment of conviction and advances six grounds for reversal.

*108 I.
Defendant claims that his privilege against self-incrimination under the Fifth Amendment of the United States Constitution, now recognized as applicable to trials in state courts pursuant to the due process clause of the Fourteenth Amendment, was denied him because he found it necessary to take the stand and admit a prior related conviction rather than refuse to testify and allow comment thereon.
Our Supreme Court recently had occasion to consider a similar contention in State v. Garvin, 44 N.J. 268 (1965), in the light of Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), and found it legally insufficient as a basis for reversal of conviction. We find the Garvin decision dispositive of this contention. See, too, State v. Brown, 41 N.J. 590, 591 (1964), certiorari den. 377 U.S. 981, 84 S.Ct. 1888, 12 L.Ed.2d 749 (1964).

II.
Defendant asserts that the trial court committed prejudicial error in refusing to allow into evidence certain conversations defendant and his witnesses had with one Tony Piccolo at the time the alleged illicit sale of narcotics took place on December 8.
Piccolo, a former narcotics user, was assisting the police in their efforts to arrest the sellers of narcotics. Louis Grossi was an investigator for the State police and utilized the services of Piccolo, who evidently knew how and where to reach people in the trade in the Passaic County area. On December 8, 1962 Grossi and Piccolo drove to defendant's home in Paterson. Piccolo was dead at the time of trial, but Grossi testified as to the events that followed. Piccolo blew the car horn and was answered by a voice from the third floor of the building. Piccolo referred to the person as "Tal." Piccolo then went into the house with money provided by Grossi for the purchase of narcotics. A few moments later Piccolo returned to the front porch with the defendant. Grossi joined them, *109 discussed price with the defendant and gave Piccolo additional money for the defendant. Piccolo and the defendant then went into the hallway where Grossi saw Piccolo receive, in return for the money, three envelopes. It is not disputed that these envelopes contained heroin, although defendant denied that this incident occurred.
For the sake of clarity, we note at this point that the December 12 incident did not occur at defendant's home. According to Grossi, he again met Piccolo in Paterson on December 12 and they proceeded to the Paradise Club. Piccolo entered alone and shortly thereafter reappeared at the doorway with the defendant, who asked Grossi how many bags he wanted. Grossi indicated two and gave Piccolo the money therefor. Within sight of Grossi, according to his testimony, defendant gave Piccolo the envelopes in exchange for the money given by Piccolo to defendant. It is undisputed that these envelopes also contained heroin. But here again defendant testified that no such event ever took place.
The excluded conversations related, therefore, only to the December 8 incident when, admittedly, Piccolo entered defendant's house in Paterson. Defendant's attorney asked permission of the trial judge to make an offer of proof but permission to do so was refused on the ground:
"Mr. Piccolo has not testified, therefore the question is not to contradict or affect the credibility of Mr. Piccolo."
Thus, the trial record does not disclose what the alleged conversations were. Nor does the brief on appeal apprise us as to the nature of the conversations, or how defendant was prejudiced by their exclusion. Inquiry at oral argument as to what the proffer of proof would have been, if allowed, or how defendant could have been aided by any such testimony as to conversations in defendant's upstairs apartment, when the sale allegedly took place downstairs in the hallway, produced an "I don't know" response from defendant's attorney.
Thus, the basis for a reversal on this ground has not been established. The trial judge should have permitted the proffer *110 of proof to be spread on the record. R.R. 3:7-8; R.R. 4:44-3. His failure to do so was error. But, absent a showing of prejudice to defendant, the error does not warrant a reversal of the conviction.
Whitfield Slade, a friend of defendant, testified that he was in defendant's apartment on the night of December 8 when Piccolo entered, stayed for a few minutes and then left. Slade said that he accompanied Piccolo to the ground floor where they parted, Slade proceeding to the basement and Piccolo out the front door. Slade observed no one else in the area. Slade stated that defendant did not leave his apartment when he and Piccolo left together. In this respect, Slade's story was corroborated by his girl friend and by defendant's wife, who were also in the apartment at the time. This testimony, to the extent that it was at variance with that of State police officer Grossi, presented an issue of fact and an evaluation of credibility, within the special province of the jury and obviously resolved against defendant and his friendly witnesses.
An analogous situation presented itself with reference to the alleged sale on December 12. Officer Grossi's testimony was sufficient, if believed by the jury, to establish that the sale by defendant took place. Defendant admitted that he was in the Paradise Club for several hours on December 12 and saw Piccolo coming into the club on that date, that Piccolo spoke generally to a group in which he was standing, but he denied going out the door with him or selling any narcotics. George Booker, another acquaintance of defendant, testified to being in the Paradise Club on that occasion and seeing both defendant and Piccolo there, but he stated that Piccolo had no conversation with defendant, except that defendant was in a group. Booker also alleged that defendant did not go out the door with Piccolo, but another fellow named Jerome did. It was for the jury to resolve the conflicting versions as to what happened in and about the Paradise Club on December 12. There was substantial evidence to support its verdict.

*111 III.
Defendant's next contention is that the trial court committed reversible error in refusing to allow his attorney to offer proof that he "did not have criminal inclinations of selling narcotics to Piccolo."
Defendant testified on direct examination that he never had occasion to purchase narcotics in Paterson. His attorney then asked him:
"When you purchased narcotics in New York, did Anthony Piccolo ever go with you?"
Objection to this question was sustained. Defense counsel then inquired:
"Do you know of your own knowledge whether Anthony Piccolo ever purchased narcotics?"
Objection to this question was also sustained. Defendant's attorney then asked the trial judge if he might make an offer of proof. He was not permitted to do so, the trial judge giving as his reason:
"Mr. Piccolo has not testified, therefore the question is not to contradict or affect the credibility of Mr. Piccolo."
Defendant maintains that this ruling constituted reversible error.
Defendant advises us that his counsel sought to show that defendant had never before dealt in narcotics with Piccolo, that he did not have any inclination in that direction, and that the meetings of Piccolo and defendant at the times in question were not to deal in narcotics, but for other purposes.
As noted above, it was error on the part of the trial judge not to permit the offer of proof. "Without such disclosure, an appellate court cannot readily evaluate whether the exclusion, although erroneous, resulted in manifest wrong or injury." State v. Abbott, 36 N.J. 63, 77 (1961). We have held *112 that a specific offer of proof must be made and "[a]bsent such offer, the court is unable to reach a conclusion as to the reversible error suggested, and should not speculate upon its existence." State v. Micci, 46 N.J. Super, 454, 458 (App. Div. 1957). By refusing to allow defense counsel to make his offer of proof, we must consider what defendant now says his offer of proof would have been. For aught we know, it might have been otherwise expressed at the trial, if the trial court had permitted it to be stated on the record, as provided for in the rules. R.R. 3:7-8; R.R. 4:44-3.
Despite the trial court's error in not allowing defendant's attorney to make a specific offer of proof, we find no prejudicial error because the proof defendant wanted to offer was not relevant or material to the issues in this case. As the trial court pointed out, Piccolo had not testified. Therefore, the proof could not have been used to contradict him or to affect his credibility. What probative value was there in testimony as to whether Piccolo ever purchased narcotics or accompanied defendant when the latter went to New York to purchase narcotics? Piccolo had been a previous user of narcotics and was, at the time in issue, aiding the police in their efforts to reach the sellers. Either defendant made the sales at the times in issue, as Grossi testified, or he did not, as he testified. Defendant's prior relationship with Piccolo would not disprove the happenings on December 8 and December 12, 1962. Prior disinclination toward criminal activity does not offset direct evidence of criminal activity at a specific later time. Men who are good for many years do commit crimes.

IV.
Defendant argues that the trial court committed prejudicial error in allowing into evidence, over his objection, as part of the exhibits the large brown envelopes into which, according to testimony by Officer Grossi, he had placed the glassine bags of heroin allegedly purchased from defendant. These outer envelopes had endorsed thereon, in the handwriting *113 of Officer Grossi and so identified by him, a date, time, weather condition, defendant's name, a place, a specified number of bags and the initials of Officer Grossi.
These outer envelopes and their contents had been transmitted to John P. Brady, Chief Chemist and Toxicologist for the New Jersey State Police, for an analysis of the white powder in the glassine bags. Mr. Brady testified that he received the three brown envelopes, marked as above for identification, and placed the laboratory red number on each brown envelope. He stated that the glassine bags, in each instance, contained "a mixture of Diasatel Morphine which is Heroin and Quinine."
When objection was made during the examination of Mr. Brady by defendant's attorney to the writing on the brown envelopes, the trial judge then directed that the glassine bags be placed in three blank envelopes and they were marked as exhibits in the case, one for each of the three dates in issue. Later, when Officer Grossi identified the brown envelopes, with his writing thereon, as having been used by him in placing the glassine bags therein for transmittal to Mr. Brady, the trial judge admitted the brown envelopes into evidence for the purpose of "identification."
"Objects or things offered in evidence do not generally identify themselves. Accordingly the demonstrative evidence must first be authenticated by testimony of a witness who testifies to facts showing that the object has some connection with the case which makes it relevant." McCormick on Evidence (1954), § 179, p. 384. This is usually called "identifying" the object. Where, as in the case of seized or purchased narcotics, the object has passed out of the possession of the original receiver and into the possession of others, the "chain of possession" must be established to avoid any claim of substitution or tampering. Failure to submit such proof might result in exclusion of this real evidence. 7 Wigmore on Evidence (3d ed. 1940), § 2129, pp. 564-569; Morgan, Maguire and Weinstein, Cases and Materials on Evidence (4th ed. 1957), p. 87.
*114 "This process of authenticating chattels is ordinarily referred to as identifying them; but the two ideas are distinct; * * *. Authentication * * * presupposes a single object only, and refers to it as associated with a person, a time, a place, or other known conditions." 7 Wigmore on Evidence (3d ed. 1940), § 2129, p. 569. Grossi's notations on the brown envelopes constituted such an authentication, an association of the contents thereof "with a person, a time, a place, or other known conditions." Wigmore notes that "the principle of Authentication requires that some evidence connecting the object with those conditions be introduced before or at the time of offering the object itself." Ibid. At most, the notations were merely cumulative evidence of Grossi's testimony. See, too, Annotation, 21 A.L.R.2d 1229 (1952), noting that "the various steps in the keeping" of the thing taken constitute one of the chief points necessary to be proved in establishing its identity and proof of the proper keeping depends upon the precautions which are shown to have been taken.
Defendant cites Springer v. Labow, 108 N.J.L. 68, 70 (Sup. Ct. 1931), and State v. Cooper, 10 N.J. 532, 554 (1952), as legal support for his position. These cases hold that, when a State's witness has testified to an interview with the defendant, a transcribed memorandum of that interview may not be received in evidence as corroboration of the witness' testimony. The rationale is that the jury ought to rely upon its recollection of the oral testimony without a constant reminder thereof in the form of the written memorandum.
The brown envelopes herein were received in evidence, not as corroborative proof of some interview with defendant as in Springer v. Labow and State v. Cooper, but merely for authentication purposes and to establish a chain of custody by the police of the bags of heroin from the time of their delivery to Officer Grossi to the date of trial. While defendant does not now challenge proper custody of the glassine bags by the police and the nature of their contents, precaution born of experience in other cases dictated careful police identification *115 of the incriminating evidence and the need to prove transmission by one authorized police official to another. These identified and identifiable receptacles for the contraband heroin did not need the name of defendant thereon. But, under the totality of the facts and circumstances herein, we find no prejudicial error in the admission of the brown envelopes as evidence of a link in the "chain of possession" and of authentication.

V.
Error is claimed by defendant in the failure of the trial judge to instruct the jury as to the exhibits relating to the first count, after that count was dismissed.
Defendant's attorney requested that the exhibits relating to the dismissed first count be removed from the jury's consideration. The trial judge stated that he would instruct the jury. Thereafter, the trial judge directed the court clerk that these exhibits were not to be taken into the jury room. But the trial judge gave no specific instructions regarding them. Defendant maintains that the effect on the jury of the absent exhibits, without having been instructed concerning them, "can only be described as confusing." The latter assertion is based upon the trial judge's telling the jury in his charge that it should make an "examination * * * of all of the evidence, including the exhibits marked in evidence." (Emphasis added)
The two exhibits in question, S-1 and S-4, were respectively the brown envelope into which the two glassine bags allegedly obtained on December 7 had been placed by Grossi and the blank envelope containing these two bags into which they were placed by direction of the court, when defendant first objected to the brown envelope because of Grossi's writing thereon. Thus, these exhibits were similar to those received in evidence and referrable to the December 8 and December 12 episodes.
Despite the trial judge's earlier promise to instruct the jury with reference to S-1 and S-4 and his later failure to do so, it *116 is reasonable to assume that the instruction was not given because these exhibits were actually excluded from the jury room. An instruction with reference to them might have emphasized their existence. Telling a person not to consider some specific matter often has a tendency to focus his mind on it. Defendant's attorney made no objection to the trial court's omission from the charge of any reference to the excluded exhibits and made no request to charge as to them. Nor was there any objection to the trial court's instruction to examine all of the evidence, "including the exhibits marked in evidence." We are satisfied that no "plain error" was committed in the failure to instruct as to excluded exhibits or in the use of the reference to exhibits "marked" in evidence. The jury did not see the excluded exhibits because they never entered the jury room.
Defendant relies upon Palestroni v. Jacobs, 10 N.J. Super. 266, 272 (App. Div. 1950). That case is readily distinguishable. There, evidence entered the jury room which had not been admitted during the trial, namely, a dictionary which the jury used to ascertain the definition of a contracting term, "wainscot," used in one of the specifications of the building contract. This was held to be reversible error. In the instant case, the two exhibits probative of the first count were excluded from the jury room because of the dismissal of the first count.
We find no prejudicial error in the trial court's conduct under this claim.

VI.
Defendant's final point is that the trial court committed reversible error when it failed to instruct the jury as to the issue of entrapment.
We find no substantial merit in this contention. Defendant concedes that he did not raise the defense of entrapment at the trial and he did not request an instruction by the court with reference to such defense. However, he argues that the trial judge, sua sponte, should have instructed the jury on *117 entrapment and his failure to do so constituted "plain error." R.R. 1:5-1(a). Such an instruction would have been inconsistent with defendant's position at the trial. He testified that he did not make the sales and that the events testified to by Grossi never took place. A charge on entrapment, given voluntarily by the trial court without any request by defendant for such, would have carried judicial implication that the sales were made.
Furthermore, the record does not support any claim of entrapment. As stated in State v. Dennis, 43 N.J. 418, 425 (1964):
"Though the law does not tolerate traps for unwary innocents, it does not preclude traps for unwary criminals; thus it does not prohibit police officials from affording opportunities or facilities for the commission of criminal offenses, nor does it bar them from using artifices and decoys in obtaining evidence against those engaged in criminal enterprises. See State v. Dolce, supra, 41 N.J. [422], at pp. 431-432. Mere solicitations by officers posing as private citizens and resulting in ordinary sales as between buyers and sellers have repeatedly been held not to give rise to any entrapment issues."
The evidence indicates that the police used Piccolo as a decoy in obtaining evidence of defendant's criminal activity. The law "does not preclude traps for unwary criminals," as noted in Dennis, supra.
The judgment of conviction is affirmed.
CONFORD, S.J.A.D. (dissenting).
I agree with the opinion of the court except in one respect. I regard the admission in evidence of the brown envelopes containing the written notations by Officer Grossi, Exhibits S-2 and S-3, to have been incompetent, and, under State v. Cooper, 10 N.J. 532, 554-555 (1952), and Springer v. Labow, 108 N.J.L. 68 (Sup. Ct. 1931), to have been clearly prejudicial to the defendant. The attempt to justify the admission of these writings, which in the jury's mind could well have confirmed Grossi's oral testimony inculpating the defendant, as necessary for the State to establish the identification and contents *118 of the narcotics envelopes allegedly received by Grossi from defendant, does not stand up upon analysis of the record.
Officer Grossi testified that on each of three specified dates defendant sold him glassine envelopes, supposedly containing narcotics, through the intermediation of one Piccolo, a narcotics user acting as a police decoy, and since deceased. Grossi testified as to the specific place, date and circumstances surrounding each of three sales. (The first count of the indictment, covering the first alleged sale, was dismissed by the trial court for lack of sufficient proof.)
Chemist Brady was put on the stand by the State to prove the glassine envelopes contained narcotics, and he did so. He produced three brown envelopes which he said had been given him by Detective Kell of the State Police, and he said these contained the glassine envelopes whose contents he had analyzed. Brady identified the brown envelopes by numbers circled in red ink which he had placed thereon. However, there were other writings on each brown envelope later established to have been made by Officer Grossi, who stated he had put the glassine envelopes into the brown envelopes for identification. The writings on each of the brown envelopes included the name of the defendant, a date and hour corresponding to the date and hour of the alleged sale, the weather at the time, a place corresponding to the testimony as to the place of sale (e.g., "Paradise Club"), the number of "bags" sold, and Grossi's initials. Before Brady testified as to the chemical contents of the glassine envelopes the brown envelopes were marked for identification, Exhibits S-1, S-2 and S-3, respectively. After the Brady testimony the exhibits were offered in evidence by the State, but the defense objected to the envelopes going into evidence because of the writings thereon. Apparently agreeing with the objection at that time, the trial judge directed the separate contents of each of the three brown envelopes to be transferred to three plain white envelopes which were then marked in evidence, respectively, as Exhibits S-4, S-5 and S-6. Both sides expressed agreement with this procedure.
*119 Officer Grossi was then brought back to the stand and explained the memoranda he had made on the brown envelopes, Exhibits 1, 2 and 3. He said these, with the glassine envelopes in them, had been given by him to Detective Kell to deliver to Mr. Brady for analysis. The State then again offered the brown envelopes into evidence, and the defendant objected again because of "the character of this other writing." The objection was overruled, subject to connection up by Detective Kell (which later transpired), the court explaining "it is only identification. It has been testified to * * * otherwise we don't know what Mr. Brady examined chemically." The brown envelopes were thereupon admitted in evidence over renewed objection.
In summation, defense counsel made no attack on the identification of the glassine envelopes, the tracing thereof by the State from Grossi to Brady, or the proof of the chemical contents thereof as narcotics. His plea was simply that the evidence of implication of the defendant as the seller was not worthy of credence. In the course of the judge's charge to the jury he stated: "There is no dispute in the case at bar that the glassines did, in fact, contain Heroin, and that Heroin is a narcotic drug." At that point he asked counsel, "Isn't that so, Gentlemen," and both sides responded in accord.
At the conclusion of the charge, after the judge excluded Exhibits S-1 and S-4 from evidence because of his previous dismissal of the first count of the indictment, the defense once more renewed its objection to the writings on Exhibits S-2 and S-3, and the court again overruled it, saying: "I am going to allow it to go in because it connects the association as to how it got to Mr. Brady and how it got back and was presented into Court. Otherwise, there would be a break in the chain. * * * Whatever appears, Counselor, whatever appears on the brown envelopes has already been testified to, so at best it is cumulative." However, the court had at no time instructed the jury to disregard Grossi's notations on the brown envelopes in relation to the crucial issue whether any sales by defendant had actually taken place. The jury were in fact told *120 to determine defendant's guilt or innocence "after an examination and consideration of all the evidence, including the exhibits marked in evidence."
As to the incompetency of the written memoranda on the brown envelopes as proof of the State's case against defendant there is no question, and no one in this case has offered to defend them as such. See Springer v. Labow and State v. Cooper, both supra. Both of those decisions stress the harmful nature of an incompetent writing relevant to the subject matter of a litigation. In Springer, reversing a judgment on a jury verdict because of the admission in evidence of an incompetent writing, Mr. Justice Case said for the court (108 N.J.L., at p. 70):
"A thing in writing carries, particularly with the layman, a weight of its own. When the jury withdrew, they took with them their recollection of the defendant's testimony and their recollection of Jacobson's testimony and, in addition, this exhibit, which not only was a thing in writing, but, because of that fact, was a present and constant reminder to the jury of its contents. It may have been the fulcrum upon which the verdict turned."
In State v. Cooper, supra, relying upon Springer, a conviction was reversed, one reason being the admission of similar evidence, even though for a limited purpose, the court declaring (10 N.J., at p. 555):
"The compelling, underlying reason [is] that a written statement would shear `the balance of the oral testimony in the case of the weight it would otherwise have' and was erroneous because a thing in writing carries, particularly with the layman, a weight of its own. Exhibit S-89 should not have been admitted in evidence despite the limitations sought to be imposed upon it.
It was a written monument of evidential value and was present in the jury room and a constant reminder to the jury of its contents. Springer v. Labow, 108 N.J.L. 68 (Sup. Ct. 1931)."
The lesson of the quoted authorities in the present application is plain. Defendant's whole case rested on a pitting of the credibility of himself and his witnesses against that of the State's witness, Grossi. The written documents purporting to *121 fix the date, hour, place and even the attendant weather, of the sale, and naming the defendant, were undoubtedly powerful, albeit incompetent, components of the State's probative armament in the contest for the jury's favor. The prejudicial effect thereof on defendant's case is not subject to fair doubt. What the trial court regarded as merely the "cumulative" effect of these writings was indeed the essence of their harmfulness, under the rationale of Springer and Cooper.
It was not essential, or even important, to the State, to have Exhibits S-2 and S-3 physically before the jury during their deliberations in order to meet its conceded obligation to trace the narcotics from defendant to Brady and thereby establish the reliability of the proof that what was allegedly taken from defendant was in fact a narcotic drug. The State had submitted meticulous and unexceptionable prima facie proof of that fact through the oral testimony of Grossi, Kell and Brady, the sufficiency of which the defendant never contested. Defense counsel, moreover, expressly conceded, at the invitation of the court during the charge, that the glassines offered in evidence contained heroin. When given to the jury for consideration during their deliberations the narcotics were no longer even in the brown envelopes. Letting the jury have resort to those envelopes and the memoranda thereon in the jury room thus subserved no necessary or proper purpose in the circumstances. Such action, therefore, needlessly prejudiced the defendant with the jury, at least in the absence of an express instruction to the jury, in the light of defendant's proper objections, that the writings were not to be considered in relation to the issue of participation by defendant in any sale.
I would therefore reverse and remand for a new trial.