**People of the State of Illinois, Plaintiff-Appellee, v. John Shaw, Defendant-Appellant.**

**Gen. No. 50,784.**

First District, Fourth Division.

December 5, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED
Unlawful sale of a narcotic drug.[1]

DEFENSES RAISED AT TRIAL
Denial of the conduct charged, and entrapment.[2]

JUDGMENT
After a jury trial, the defendant was found guilty and a life sentence was imposed. (Pursuant to section 38 of the Criminal Code (Ill Rev Stats (1965), c 38, § 22–40), the life sentence was mandatory when, at the hearing in

---

[1] Ill Rev Stats (1965), ch 38, § 22–3.

It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug except as authorized by this Act.

[2] Ill Rev Stats (1965), ch 38, § 7–12.

A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated.

aggravation, the court was advised of defendant's prior conviction in the United States District Court at Chicago for the unlawful sale of narcotics.)

POINTS RAISED ON APPEAL

(1) Defendant's motion to suppress evidence was arbitrarily denied.

(2) Cross-examination of the informer was unduly restricted.

(3) The court erroneously refused an instruction on entrapment.

(4) Defendant did not receive a fair trial.

(5) Defendant was not proved guilty beyond all reasonable doubt.

EVIDENCE

On the evening of July 18, 1964, defendant was arrested without a warrant at his home in Chicago and charged with the unlawful sale of narcotics. At the time of arrest some money was seized from defendant's person, the house was searched, and a quantity of heroin was seized from the inside coat pocket of defendant's suit hanging in an upstairs bedroom closet. The seized items were admitted into evidence at the trial.

Prior to trial defendant moved to suppress the evidence thus seized,[3] which motion, after hearing, was denied. At the hearing defendant, his sister with whom he resided, and his cousin testified in support of the motion. The sister testified that on July 18, 1964, between 6:00 p. m. and 7:00 p. m., a girl whom she identified as Veronica Dettmer was at her home for about five minutes, during which time she spoke to defendant and defendant gave her a radio. Defendant testified that the radio had been security for a loan to Dettmer. Defendant and his sister both testified to brutality, threats, racial discrimination, and the use of profanity by the police. However, their

_____
[3] Ill Rev Stats (1965), ch 38, § 114–12.

testimony as to the actual instances was internally inconsistent and inconsistent with each other's testimony. The cousin testified that when she arrived at the sister's home, the police had left, the house was in turmoil, and defendant's sister was quite upset. In response, the State called but one witness, Police Officer Nadile.

Nadile testified that on the evening of July 18th, 1964, he received a phone call from one Veronica Dettmer, who told him she could make a controlled purchase of narcotics from defendant at his home. Dettmer came to the police station where her outer garments and purse were searched by Police Officer Craig in the presence of Nadile. Finding neither money nor narcotics, they gave her fifty dollars, the serial numbers of which were recorded. The officers and Dettmer then proceeded to the neighborhood of defendant's residence where a taxi was hailed. After the back seat of the cab was searched by the police, Dettmer was sent to defendant's home in the cab, the officers following in a police car. As Dettmer entered the home, Craig moved to where he could watch, while Nadile stationed himself at the side of the building. After several minutes Craig went to Nadile, saying "she just turned them." Approximately one minute later, Dettmer emerged from the building with a tinfoil package which she handed to Craig. Craig field tested the white powder inside the package and found it contained heroin. Dettmer said she had just purchased the package from defendant for fifty dollars. At this time the officers entered the house, arrested defendant, and seized the fifty dollars of prerecorded bills which he was holding in his hand. Subsequently, Craig, accompanied by defendant, went upstairs where he found and seized seventeen grams of heroin.

At this point the court interrupted, saying, "I think I have heard enough." After pointing to specific conflicts in the testimony for the defense, the judge stated that he

believed generally Nadile's testimony, and denied the motion to suppress any of the seized evidence. Neither Dettmer nor Craig testified at this hearing.

At the trial Craig testified that he had seen the transfer through defendant's living room window; that a third man was present at the scene, an addict who was brought along to mislead defendant into believing that he, and not Dettmer, had informed; and that this man had not gone upstairs. Nadile also testified at the trial to the same effect as his testimony at the preliminary. Nadile and Craig were in substantial agreement.

Dettmer testified that she had purchased the narcotics; that she had known defendant; that she previously had regularly purchased narcotics from him; that she was employed as a cocktail waitress, and that she had been addicted to narcotics for seven years.

Defendant testified that the third man who came in with the police had gone upstairs and, he believed, put the narcotics in his suit; that he (defendant) had refused to sell Dettmer narcotics on that evening; that he had known Dettmer, and that she had been at his home earlier that evening to pick up her radio which he had held as security for a loan.

At the close of evidence, defendant tendered an entrapment instruction which the court refused. Thereafter, in his written motion for a new trial, defendant assigned as errors, among others, the denial of this tendered instruction, the refusal to allow Dettmer to state her address on cross-examination, and the denial of defendant's pretrial motion to suppress. The motion for new trial made no claim of prejudice arising from comment on the large quantity of heroin which was seized. The motion was denied.

OPINION

(1) Defendant contends that the trial court's denial of his motion to suppress was arbitrary. However, before

ruling, the court heard testimony that one officer had seen the transaction; that Dettmer had completed the sale; and that the package Dettmer brought out of the house was tested and found to contain heroin.

■ Do these facts furnish an adequate basis for a reasonable belief that an offense had been committed? If so, this constitutes statutory grounds for arrest by a peace officer. Ill Rev Stats (1965), c 38, § 107–2(c). Considered in the light of People v. Boozer, 12 Ill2d 184, 188, 145 NE2d 619, the foundation is more than adequate. The Boozer case also involved a controlled sale of narcotics. Upon leaving the house after making the purchase, the purchaser nodded his head as a prearranged signal to the hidden policemen. The court considered this sufficient, and found that the officers had reasonable grounds to believe that the offense had been committed by the defendant. The instant case is even stronger, since one of the officers actually saw the purchase and made a narcotics field test prior to defendant's arrest.

■■ There is no question that, incident to a lawful arrest, a search of the person arrested and the area under his immediate control is reasonable. United States v. Rabinowitz, 339 US 56. In People v. Braden, 34 Ill2d 516, 519, 216 NE2d 808, the court considered the scope of the area which might properly be searched, incident to a lawful arrest. The defendant there was arrested at his apartment for the unlawful sale of narcotics. Other rooms, closets, and a refrigerator in the hall outside of the apartment were searched. The search was found to have been reasonable, since the area under defendant's immediate control includes "the premises in which the person has been arrested." In the case before us, the search of a single living unit, upstairs and down, seems to be no more extensive. This search is distinguishable from that in Agnello v. United States, 269 US 20, which involved a house several blocks from the site of the arrest,

and the searches in People v. Watkins, 19 Ill2d 11, 166 NE2d 433, and People v. Reed, 37 Ill2d 91, 227 NE2d 69, which involved arrests for traffic offenses.

■ Defendant contends that it was reversible error for the court not to have required Dettmer to testify at the hearing on his motion to suppress, and refers to the case of Roviaro v. United States, 353 US 53, 62. The Roviaro court described the problem as "one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Here, neither interest is involved, for the State called Dettmer at the trial, defendant knew Dettmer prior to his arrest, and her name was disclosed to him by the State.

In People v. Wolfe, 73 Ill App2d 274, 280, 219 NE2d 634, the court stated: "We are compelled to hold that an informer who participates in a crime, as is the situation in the case at bar, must be disclosed at a pretrial hearing on a motion to suppress, if other evidence does not establish probable cause and failure to allow such a disclosure is error." Contrapositively, however, such error does not exist where, as here, defendant knew the informer's identity and probable cause was established independently. Further, the informer's reliability need not be demonstrated if the informer's information is independently verified by the arresting officers. People v. McFadden, 32 Ill2d 101, 203 NE2d 888; People v. McClellan, 34 Ill2d 572, 574, 218 NE2d 97.

■ Defendant also contends that the court ruled prematurely on his motion. Since the court specifically found that the facts were generally as Officer Nadile described them, and these facts were sufficient to establish that the arrest was lawful and the search and seizure reasonable, the decision of the judge was proper. Defendant failed to meet his burden of persuasion on the motion. Ill Rev Stats (1965), c 38, § 114–12(b).

██ (2) Defendant contends that he was denied a fair trial because the court would not allow him to elicit the address of Dettmer's residence or place of employment. However, this contention is not supported by the authorities upon which he relies.

Roviaro v. United States, supra, is clearly distinguishable, for the informer was never identified or called to testify. Still, the court points out that "no fixed rule is justifiable. . . ." People v. Wolfe, supra, deals only with disclosure of the identity of the informer for preparation of the defense.

Defendant contends that People v. Smith, 69 Ill App2d 83, 216 NE2d 520, and Alford v. United States, 282 US 687, hold that an informer's address is a legitimate inquiry during cross-examination. However, in neither case are the facts similar nor does the reasoning require such an absolute rule.

The Smith case involved the prescribing of narcotics by a chiropodist where good faith was an essential element of the state's case. The informer, an admitted narcotics addict with two prior convictions, supplied testimony necessary to the conviction. She testified under an assumed name. Her address was, therefore, the only method by which the defense could probe her interest, motivation and complete environment. She was a stranger to defendant.

The Alford court did find that the witness' address was a proper subject on cross-examination. However, it states at 694, "the extent of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. Storm v. United States, 94 US 76, 85; Rea v. Missouri, 17 Wall 532, 542–543; Blitz v. United States, 153 US 308, 312." The court reasoned that under the circumstances of that case the address was an essential step in identifying the witness with his environment. (Page 693.) In Alford,

the testimony of the informer, who was then in federal prison, was the only evidence of a conversation with defendant. It was therefore the right of defendant to show the possible effect of fear or favor growing out of the detention of the witness. In the case on appeal, no such bias could have been shown. Defendant, by virtue of his acquaintance with Dettmer, easily could have identified her with her environment. Further, she testified sufficiently to her environmental background to have served any legitimate purpose of the defense. Only her address was withheld to protect her from a possible reprisal.

When we bear in mind that the United States Supreme Court later recognized that no fixed rule exists on such matters (Roviaro v. United States, supra), we cannot say that the trial court abused its discretion, especially since all of Dettmer's testimony was corroborated by other witnesses.

■ (3) Defendant contends that a tendered instruction on the subject of entrapment should have been submitted to the jury. We make no decision as to whether or not there was any evidence of entrapment in this case because, in view of defendant's denial of the acts constituting the offense charged, the defense of entrapment was incompatible and therefore not available to him. People v. Realmo, 28 Ill2d 510, 512, 192 NE2d 918; People v. Washington, 81 Ill App2d 162, 173, 225 NE2d 673; People v. Anthony, 28 Ill2d 65, 190 NE2d 837; People v. Calcaterra, 33 Ill2d 541, 546, 213 NE2d 270.

(4) Defendant contends that he did not receive a fair trial for a number of reasons which the State argues should be beyond the notice of this court because they were not presented in the trial court and were therefore waived. In People v. Fleming, 54 Ill App2d 457, 460–461, 203 NE2d 716, we considered this point and said:

> After a jury trial, all nonjurisdictional allegations of error which are not properly objected to during

294

the trial or not asserted in the written motion for a new trial are deemed to have been waived and need not be considered by the reviewing court. People v. Greer, 30 Ill2d 415, 197 NE2d 22 (1964); People v. Gratton, 28 Ill2d 450, 454, 192 NE2d 903. There are exceptions to the general rule, but they lie within the discretion of the reviewing court and are not mandatory. As the Code of Criminal Procedure provides, "Plain errors or defects affecting substantial rights *may* be noticed although they were not brought to the attention of the trial court." [Emphasis supplied.] Ill Rev Stat, 1963, c 38, § 121–9(a).[4]

■ The points urged by defendant are that he was denied his constitutional right to a fair trial because the State failed to submit as a witness the third man, who was present at the arrest; and that the heroin found at defendant's residence, being evidence of another crime, was erroneously admitted. However, at no time during the trial or in the written post-trial motion was either of these points adequately raised.

Error in the State's failure to call a witness was similarly urged on appeal from a narcotics conviction in People v. Bridges, 67 Ill App2d 236, 214 NE2d 539. There, defendant contended that he was denied a fair trial because a girl friend of the arresting officer was not called to testify concerning defendant's denial of certain statements allegedly made by him to the officer at the time of the arrest. The girl was the only independent witness who might have corroborated the defendant's testimony. The defendant failed to raise this objection in his written post-trial motion. In affirming, the court found that the alleged error was not a plain error affecting substantial

---

[4] Section 121–9(a) has been superseded and replaced by the new Supreme Court Rule 615(a) which employs the identical language. (Ill Rev Stats, c 110A, § 615(a) (1967).)

rights. We make the same ruling here and note, further-more, Officer Craig's testimony that the third man did not go upstairs where the heroin was discovered.

■ ■ Defendant next points out that the seventeen grams of heroin seized constituted evidence of another offense, the illegal possession of narcotics, and contends that the trial court, by allowing comment thereon, com-mitted reversible error. In People v. Baxter, 74 Ill App2d 437, 221 NE2d 16, we alluded to the general rule that the admission of evidence concerning a different substantive offense is sufficiently prejudicial to constitute reversible error. We also referred, however, to a number of well-recognized exceptions to the general exclusionary rule, which exceptions have broad application to all kinds of crimes, including narcotics. See People v. Lewerenz, 24 Ill2d 295, 298, 181 NE2d 99, where the court said:

> In prosecutions for offenses involving narcotics, au-thorities are in accord that evidence of other of-fenses is inadmissible unless it comes within one of the recognized exceptions to the general rule, i. e., where it is part of the res gestae, or where it helps to disclose motive, intent, premeditation, guilty knowl-edge, malice or a common plan or scheme. (See 22A CJS Criminal Law, § 691(25) and cases there cited.)

Evidence of the seventeen grams of heroin seized at defendant's home at the time of arrest, in the instant case, was part of the res gestae, tended to prove a com-mon scheme, indicated guilty knowledge, and refuted defendant's testimony that he had no means of procuring narcotics for Dettmer. We therefore conclude that the comment which was permitted on this matter at the trial did not constitute a plain error or defect affecting sub-stantial rights, and, in fact, did not constitute error.

■ (5) Finally, defendant contends that his guilt was not established beyond a reasonable doubt. From the

296

references which we have made to the evidence, it appears that there was sufficient evidence which, if believed, adequately met the State's burden in this regard. The matter of credibility of the witnesses was, of course, for the jury and the trial judge.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.