**STATE of Iowa, Appellee,**

v.

**John BRUNO, Appellant.**

**No. 54760.**

Supreme Court of Iowa.

Feb. 21, 1973.

Edward F. Samore, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., William S. Sturges, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, HARRIS, and McCORMICK, JJ.

MASON, Justice.

John Bruno, indicted for selling hallucinogenic drugs contrary to Acts of the Regular Session of the Sixty-second General Assembly, chapter 189, section 3, appeals from judgment entered on a jury verdict convicting him of the crime charged.

In December 1969 Gayle Smith and Robert Bringle were working as undercover agents for the Iowa Narcotic Drug Division in LeMars. December 2 they were introduced to Bruno and a group of people at a residence in LeMars by an acquaintance of Bruno. Smith engaged some of the group in a conversation concerning acid, speed and marijuana. Before leaving the house Bruno offered Smith some broken tablets purported by Bruno to be acid. Smith took the packet into his possession.

Following this meeting there were other occasions when the agents visited with or saw defendant. December 6 they encoun-

tered Bruno at a local truck stop in Le-Mars. After some conversation Smith gave defendant $15 which represented the cost of "LSD" tablets that were to be delivered by defendant to Smith and Bringle at their apartment. After some apparent confusion, the three met approximately two hours later at the apartment. Defendant then gave Smith a tinfoil packet containing what he represented to be "acid." Once defendant left, Smith enclosed the packet in a stationery envelope and sealed it.

December 7, 1969 Smith transferred the envelope to his superior, Gene Battani, who immediately delivered the substance to the State Chemical Laboratory in Des Moines for analysis purposes. When the contents of the envelope were found to be LSD defendant was accused of having sold a quantity of the hallucinogenic drug lysergic acide diethylamide (LSD) to Smith.

At trial Smith and Bringle testified as to the circumstances surrounding their first meeting with defendant, the following meetings and the December 6 incident. Donald M. Booten, a chemist with the state laboratory, testified he received the package from Battani December 8; he then analyzed the substance December 16 and found it to be LSD. Several other witnesses testified for the State.

At the close of the State's evidence defendant filed motion for directed verdict alleging section 204A.3, The Code, was vague, failed to set forth the elements of the alleged crime and failed to include a definition of a hallucinogenic drug.

Defendant then introduced his evidence and renewed his motion for directed verdict at the close of all the evidence. Defendant filed two additional motions for directed verdict, all were overruled. The jury found defendant guilty of unlawfully selling hallucenogenic drugs.

The eight errors relied on by defendant for reversal are considered in the following divisions.

I. Defendant first contends the court erred in denying motion for directed verdict urged upon grounds of entrapment. He asserts the defense of entrapment was raised by the testimony of the State's first witness; that once evidence of entrapment is introduced, the burden is upon the State to prove beyond a reasonable doubt entrapment did not occur. This contention is asserted again in motion for new trial. Stated otherwise, defendant maintains the defense of entrapment was established as a matter of law.

In State v. Davis, 175 N.W.2d 407, 410 (Iowa 1970), this court stated the essence of entrapment in this language:

"Basically entrapment is the inducement of an innocent person into the commission of a crime by trickery, persuasion or fraud of a government agent. Government action in merely providing the opportunity or facilities for the commission of crime does not constitute entrapment. * * * [citing authorities]."

The foregoing statement is repeated with approval in State v. Fagan, 190 N.W.2d 800, 802 (Iowa 1971).

The State responds to defendant's argument by insisting entrapment was not available to Bruno under the circumstances. Thus, the first problem is to determine whether the principle of entrapment is available to this defendant under the record presented.

Although the doctrine of entrapment may be asserted even though defendant pleads not guilty, ordinarily the defense is not available where defendant denies commission of the very acts upon which the prosecution is predicated. Such a denial is inconsistent with the defense, which assumes the offense charged was committed but permits accused to seek relief from guilt on the ground the criminal intent or design was not his, but rather that of employees or agents of the government who planted the idea in his otherwise innocent mind by suggestion or solicitation.

The foregoing pronouncement is supported in whole or in part by the following decisions: United States v. Pagano, 207 F.2d 884, 885 (2 Cir. 1953); Munroe v. United States, 424 F.2d 243, 244 (10 Cir. 1970); Burris v. United States, 430 F.2d 399, 403 (7 Cir. 1970); United States v. Rodrigues, 433 F.2d 760, 761 (1 Cir. 1970); United States v. Groessel, 440 F.2d 602, 605 (5 Cir. 1971); United States v. Barrios, 457 F.2d 680, 682 (9 Cir. 1972); Brown v. State, 248 Ark. 561, 453 S.W.2d 50, 52; State v. Avery, 152 Conn. 582, 211 A.2d 165, 166; Pearson v. State, 221 So.2d 760, 763–764 (Fla.App.1969); People v. Shaw, 89 Ill.App.2d 285, 233 N.E.2d 73, 78; People v. Claugherty, 36 Mich.App. 648, 194 N.W.2d 54, 56; Reeves v. State, 244 So.2d 5, 6 (Miss.1971); State v. Stock, 463 S.W.2d 889, 892 (Mo.1971); State v. Parr, 129 Mont. 175, 283 P.2d 1086, 1089; State v. Johnson, 90 N.J.Super. 105, 216 A.2d 397, 403; State v. Wright, 84 N.M. 3, 498 P.2d 695, 697; State v. Good, 110 Ohio App. 415, 165 N.E.2d 28, 39; Godin v. State, 441 S.W.2d 196, 197 (Tex.Cr.App. 1969).

*Contra,* United States v. Neuman, 141 U.S.App.D.C. 131, 436 F.2d 285 (1970); People v. Perez, 62 Cal.2d 769, 44 Cal.Rptr. 326, 401 P.2d 934. At this point in time, so far as our research has disclosed, *Perez* has not been generally followed in other jurisdictions.

■ Bruno testified the tablets he delivered to Smith December 6 in return for the $15 given him were aspirin obtained from a local infirmary. Defendant said he filed the markings off the aspirin, made them smaller, placed them in a plastic packet and wrapped them in tinfoil before handing them to Smith. In this way he denied the very acts upon which the prosecution is predicated, that is, the unlawful sale of hallucinogenic drugs. In the light of this record and guided by the principle of law stated supra, we hold the defense of entrapment was not available.

II. Defendant's second assignment of error concerns the ruling of the trial court in permitting the State to amend the indictment during the course of trial.

Defendant contends the amended indictment defines an offense entirely different from that charged in the original indictment, which alleged defendant:

" * * * did, on or about the 6th day of December, 1969, unlawfully sell Hallucinogenic Drugs, not obtained upon a valid prescription and held in the original container in which said drugs were delivered contrary to the statutes in such cases made and provided in Section 204A.3 of the 1966 Code of Iowa as amended by Chapter 189, Section 3, Acts 1967 (62 G.A.)."

The State amended its indictment as follows:

" * * * Did, on or about the 6th day of December, 1969, unlawfully and feloniously sell Hallucinogenic Drugs, as defined in Section 204A point 1, Subparagraph 6 Subparagraph C, of the 1966 Code of Iowa, as amended, by Acts of the 1967 62nd General Assembly, Chapter 189, section 1 and in 52 Stat One-Oh-Four-Oh, 1936 (sic) U.S.C., Section 321, Subparagraph V, Subparagraph 3, contrary to the statute in such cases made and provided, and Section 204A point 3 of the 1966 Code of Iowa, as amended by Chapter 189, Section 3, Acts 1967, 62nd G.A."

The indictment was amended pursuant to section 773.43, The Code, 1966, which provides: "The court may, on motion of the state, and before or *during the trial, order the indictment so amended as to correct* errors or *omissions in matters* of form or substance." (Emphasis supplied).

■ That part of the original indictment not repeated in the amended indictment was properly eliminated as surplusage. See State v. Finnegan, 244 Iowa 166, 55 N.W.2d 223.

■ The language inserted in the amended indictment merely referred to an-

other section of chapter 204A which defines a "depressant or stimulant drug" as one "having a hallucinogenic effect," thereby making the alleged crime more specific—the sale of a hallucinogenic drug.

Thus, under the amended indictment the crime charged remained the same: that defendant "did, on or about the 6th day of December, 1969, unlawfully * * * sell Hallucinogenic Drugs * * *."

The court did not err in permitting the State to amend. See State v. Crutcher, 174 N.W.2d 449, 451–452 (Iowa 1970).

III. Defendant next contends the court erred in overruling his motion for directed verdict based on the contention the alleged unlawful act was possession, not selling, and in submitting the case to the jury on the issue of selling instead of possession. He argues the court should have submitted the question whether defendant sold the alleged drugs to the undercover agent (Smith) or was acting solely at his request and as agent of Smith to the jury. Apparently, it is defendant's theory an affirmative finding as to the issue would prevent his conviction of selling narcotics.

Examination of the reporter's transcript which was filed in lieu of a printed record in this matter discloses defendant's motion was based on the allegation the statute under which he was charged was vague, uncertain, failed to state the nature of the crime, failed to state the specific elements of the crime and failed to define a hallucinogenic drug. Defendant also alleged he was not required to take judicial notice of any regulations of any federal act unless they be specifically defined and set forth in the United States Code. This motion was renewed at the close of all evidence. In other motions defendant alleged entrapment. In another motion he contended the State had failed to prove the purported drug sold was in fact a hallucinogenic drug as defined by the law of Iowa and further failed to prove its case by competent evidence.

The foregoing fairly presents all matters urged by defendant in support of his motion for directed verdict.

The contentions raised in this court were not presented to the trial court.

■ "We have consistently held that ordinarily matters not raised in the trial court, including constitutional questions, cannot be effectively asserted the first time on appeal. * * * [citing authorities]." State v. Beer, 193 N.W.2d 530, 532 (Iowa 1972).

■ On the other hand, if defendant's assigned error is interpreted as a claim that there was insufficient evidence to sustain the charge of "selling" a hallucinogenic drug, the question is properly before the court.

■ In this connection we have frequently said that on defendant's appeal from criminal conviction based on jury verdict challenging sufficiency of evidence to sustain the verdict this court views the evidence in the light most favorable to the State and accepts as established all reasonable inferences tending to support action of the jury. It is necessary to consider only the supporting evidence whether contradicted or not. State v. Tokatlian, 203 N.W.2d 116 (Iowa, filed December 20, 1972.).

■ When the evidence before us is viewed in the light stated, there is substantial competent evidence reasonably tending to support the charge that defendant sold LSD to Smith. Clearly, the evidence does more than generate suspicion, conjecture or speculation on that issue.

On either theory the assignments of error considered in this division are without merit.

IV. Defendant also contends the court erred in overruling his motion for new trial urged on the ground of jury misconduct.

In accordance with section 787.3(3), The Code, defendant moved for a new trial on the grounds of misconduct of the jury, the sheriff and a deputy. It appears that it was necessary for the sheriff to unlock the door to the jury room. While unlocking the door, the sheriff may have spoken to one of the jurors. However, there was no further contact between the sheriff and the jury.

This appropriate language appears in State v. Carey, 165 N.W.2d 27, 29 (Iowa 1969):

" * * * We have consistently held misconduct with respect to the jury, whether it be by litigant, counsel or officer of the court, will not be grounds for a new trial unless prejudice is shown, * * * [citing authorities].

"We are, however, confronted with another equally well-established rule in considering this error—that the jury is to be above suspicion and that any practice which brings its proceedings under suspicion is to be prohibited."

In Daniels v. Bloomquist, 258 Iowa 301, 306–307, 138 N.W.2d 868, 872, the court said:

"Whether injury or injustice has resulted to the litigants by reason of the conduct, is not our primary concern. Rather, our concern is with the implication that attaches to the administration of justice under these circumstances. Confidence in our judicial system is imperiled if such conduct is countenanced in jury trials. Conduct which if proved would give rise to doubt and disrespect, or the mere appearance of such conduct as will not meet with the approval of public opinion, must be severely condemned."

█ It would seem the foregoing evidence does not require a reversal of the case. While the sheriff's conduct was objectionable and avoidable, his slight encounter with the jurors does not appear to constitute the requisite conduct that gives rise, or appears to give rise, to the kind of "doubt or disrespect" indicating prejudice.

The matter complained of does not require reversal.

V. In another assignment defendant maintains the court erred in permitting Robert Bringle, whose name was not endorsed on the indictment, to testify as a State's witness in its case in chief over defendant's objection that no notice of additional testimony concerning this witness was served on defendant.

Bringle had not appeared as a witness before the grand jury which returned the indictment involved. So, of course, no minutes of his testimony were attached to the indictment. However, pursuant to section 780.10, The Code, the State delivered a notice of additional testimony to the Plymouth County sheriff notifying defendant the State would prove by Bringle "that on December 6, 1969, at LeMars, Plymouth County, Iowa, John Bruno sold to Gayle R. Smith and this witness a quantity of LSD for $15 which was turned over to Eugene R. Battani."

After some unsuccessful effort to locate defendant in Plymouth County, the sheriff served the notice on defendant's counsel of record more than four days before commencement of trial.

Section 780.10 provides in part:

"The county attorney * * * shall not be permitted to introduce any witness who was not examined before * * * the grand jury, and the minutes of whose testimony were not presented with the indictment to the court, unless he shall have given to the defendant, or his attorney of record if the defendant be not found within the county, a notice in writing stating the name, place of residence, and occupation of such witness, and the substance of what he expects to prove by him on the trial, at least four days before the commencement of such trial."

The purpose of this statute is to inform defendant of the witnesses against him and the substance of their testimony. State v. Johnson, 259 Iowa 599, 604, 145 N.W.2d 8, 11.

To authorize service of the notice of additional testimony on the attorney, instead of the accused, it is not essential that the latter should have gone beyond the boundaries of the county. It is sufficient that the officer, after diligent search, failed to find him. State of Iowa v. Hasty, 121 Iowa 507, 516, 96 N.W. 1115, 1118.

Near the close of the second day of trial the court conducted a hearing in the absence of the jury relative to defendant's allegation that while he was available to be served with notice, service was made on his attorney. At this hearing the Plymouth County sheriff, defendant's trial counsel and defendant testified. At the conclusion of the hearing the court ruled, "Under the circumstances in this case and in the exercise of the discretion of the Court, the Court finds that a reasonable effort was made to locate the defendant in Plymouth County on the 25th day of February, 1970; and, therefore, the witness Robert Bringle, under the Notice of Additional Testimony served on defendant's counsel prior to four days before the commencing of the trial, will be admitted. He will be allowed to testify, I will say."

In considering a somewhat similar problem the court said in State v. Moline, 164 N.W.2d 151, 156 (Iowa 1969):

"This is a matter in which the trial court has wide discretion. In State v. Gilliland, 252 Iowa 664, 669, 108 N.W.2d 74, 77, we said the granting of a motion to introduce additional testimony rests largely with the trial court. We quote from that opinion: 'Matters concerning due diligence [in considering a motion to introduce additional testimony] are so much in the discretion of the trial court that we cannot say the ruling was improper. We will not interfere unless an abuse appears.' "

The trial court did not abuse its discretion in ruling the notice of additional testimony was properly served on defendant's counsel of record.

Defendant also contends under this assignment the notice inadequately stated what the State expected to prove by Bringle's testimony. At no point did defendant alert the trial court to the specific objection now being urged to the admissibility of this witness' testimony. The court had no opportunity to pass on this question.

" * * * [I]t is elementary that an objection to offered evidence must be sufficiently specific to advise the trial court why it is inadmissible. The court should not be left to speculate as to whether the evidence is in fact subject to some infirmity which the objection does not point out. Ordinarily the objection should point out in what particular or particulars the offered evidence is inadmissible and where this is not done there is no proper basis for reversal unless the grounds of the objection are obvious. * * * [citing authorities]." State v. Grady, 183 N.W.2d 707, 719 (Iowa 1971).

Defendant is now urging us to reverse on a question not raised in the trial court. This we decline to do. State v. Rankin, 181 N.W.2d 169, 171 (Iowa 1970); State v. Beer, 193 N.W.2d at 532.

VI. In still another assignment defendant asserts the court erred in overruling his objection to the introduction of State's exhibits 2 and 3. Exhibit 1 was identified by Booten as a plastic bag containing a white stationery envelope given him by Battani December 8, 1969, exhibit 2 as the white stationery envelope bearing a number of signatures and the date "12–8–69" which was also received by him from Battani. He identified exhibit 3 as a tinfoil packet containing a contents which he

chemically analyzed December 16. The witness described in some detail the analysis and, as stated, identified the material as LSD. Booten said the three exhibits were in the same identical condition at the time of his testimony as they were when received from Battani except for the material taken for analysis.

Booten had been taken out of order as a witness and defendant reserved his right to make objections after cross-examination. The exhibits were conditionally received in evidence subject to their identity being connected up. Smith identified the three exhibits as being the same he had delivered to Battani December 7.

Eugene Battani, a special agent of the Narcotic Drug Abuse Division, testified he had received the three exhibits from Smith December 7 at approximately 7:30 p. m. at the sheriff's office in the courthouse in LeMars. The witness explained certain signatures appearing on the white envelope and dates and time. He testified he made a visual examination of exhibit 3 at that time and then replaced it in the envelope. He then placed both exhibits in the plastic bag identified as exhibit 1 and delivered them to Mr. Booten the following afternoon in Des Moines. He said they were in the same identical condition when he delivered them to Booten as when received.

After the exhibits were identified by Smith they were again offered in evidence. At that time, defendant objected there were symbols, writing on exhibit 2 that had not been identified or explained. His objection was overruled and the court admitted the exhibits into evidence unconditionally.

After Smith was excused from the witness stand, three other witnesses were examined that day. The following day, another witness testified and various motions were argued. Late in the afternoon after the State had rested, defendant moved to strike exhibits 2 and 3 asserting some markings and reporter's notation were not

explained and possession was not shown to be in the custody of Booten since there was no showing as to where the exhibits were kept after being turned over to Booten. In other words, defendant asserted Booten's testimony failed to establish a continuous chain of possession essential to the admissibility of these exhibits. He had not urged this specific ground in objecting when the exhibits were offered. Because the motion was based on Booten's testimony, it should have been apparent to defendant at the time this witness testified. The court overruled defendant's motion as to each and every ground thereof.

It is the latter proposition—lack of chain of custody—that defendant urges in this assignment. In this connection defendant does not contend this specific ground was disclosed for the first time in the later course of trial.

A motion by the opponent of the examiner to strike or withdraw evidence is not timely where it should have been apparent at the time the evidence was offered that it would be inadmissible if challenged by a proper objection in the first instance and such objection is not timely made. This is also true where the specific ground asserted in the motion to strike or withdraw was not urged as a preliminary objection. See State v. Shimon, 182 N.W. 2d 113, 115 (Iowa 1970) and State v. Goff, 182 N.W.2d 921, 922 (Iowa 1971).

A motion to strike or withdraw evidence which ought to have been objected to at the time of its offering is merely another term for objection and is governed by the rules as to the time of an objection. 1 Wigmore on Evidence, (Third Ed.), section 18.

Defendant's motion to strike on this ground was not timely. Hence, it presents nothing for review. There is no merit in the other ground asserted which had also been urged in a prior objection which was overruled.

VII. Defendant next contends the court erred in taking judicial notice of the Federal Drug Act and federal regulations as to the definition of hallucinogenic drugs.

For convenience, any reference in this division to the Acts of the Regular Session, Sixty-second General Assembly, chapter 189, will be to the corresponding sections of the act as they appear in the 1971 Code. Both counsel have adopted this procedure in briefs and argument.

The words of sections 204A.1 and 204A.-3 in themselves fully set forth all the elements of the crime charged, viz., the sale of a hallucinogenic drug.

Section 204A.3, The Code, provides in part:

"Unlawful Acts. It shall be unlawful for any person to:

"1. Sell, deliver, give, dispense or otherwise make available to any person any depressant, stimulant, or counterfeit drug."

Section 204A.1, The Code, provides in part:

"Definitions. * * *

" * * *

"6. 'Depressant or stimulant drug' means any one of the following:

" * * *

"c. Any drug, or other substance having a hallucinogenic effect, which contains any quantity of a substance designated by regulations promulgated under the Federal Act as having a potential for abuse because of its depressant or stimulant effect on the central nervous system."

The statutory definitions in section 204A.1 refer exclusively to federal legislation and regulations, and for this reason State v. Dally (Del.Super.1970) 272 A.2d 781 does not support defendant's contention. In *Dally,* the statutory definition of a depressant or stimulant drug in part referred to certain federal legislation and regulations and to State Board of Health regulations. Because the indictment failed to specify whether use of the drugs involved was proscribed by the federal or state legislation, the indictment was unconstitutionally vague.

■ The court properly took judicial notice of the Federal Drug Act and regulations promulgated pursuant to the act to further define the term "hallucinogenic drug." See Socony Vacuum Oil Company v. State, 170 N.W.2d 378, 381 (Iowa 1969).

The assignment is without merit.

VIII. In his last assignment defendant contends if none of the errors assigned, standing alone, are deemed sufficient to require a new trial, the cumulative effect deprives him of a fair trial requiring reversal.

As must be obvious, we have considered each error assigned by defendant. We conclude he had a fair trial.

Defendant's counsel in this court did not represent him in the trial court. Counsel was appointed after the appeal had been perfected. He has, we believe, raised and forcibly argued every conceivable contention in connection with this case in protecting defendant's rights in the matter. We commend him.

The case is therefore

Affirmed.