**People of the State of Illinois, Appellee, v. James W. Grear, Appellant.**

**Gen. No. 52,006.**

First District, Fourth Division.

August 21, 1968.

Albert I. Zemel, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Oliver Ferguson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

CRIME CHARGED

Public indecency.[1]

JUDGMENT

After a bench trial, defendant was found guilty and sentenced to thirty days in the House of Correction.

POINTS RAISED ON APPEAL

(1) The case was tried without a jury, although defendant never consented to waiver of a jury trial.

(2) The court abused its discretion in limiting defense counsel's argument.

(3) The court erred in not orally specifying the place of confinement when sentencing defendant.

(4) The complaint failed to charge the offense with sufficient particularity.

(5) Defendant was not proved guilty beyond a reasonable doubt.

EVIDENCE

*Vivian Vorisek,* for the State.

She is the complainant (age 17 at the time of the incident; 18 at the time of trial). At about 7:30 p. m. on May 26, 1966, she was with a girl friend at the northeast corner of the intersection of Archer and Menard. It was daylight.

Defendant approached the intersection, driving a car west on Archer, and made a right turn onto Menard at 5 to 10 miles per hour. The car turned the corner without

---

[1] Ill Rev Stats (1965), c 38, § 11–9, Public indecency.

(a) Any person of the age of 17 years and upwards who performs any of the following acts in a public place commits a public indecency:

. . . . . .

(3) A lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of the person;

(b) "Public place" for purposes of this Section means any place where the conduct may reasonably be expected to be viewed by others.

stopping and took about five seconds to pass her. Defendant was alone in the car.

Defendant was looking directly at her. He did not speak or motion to her. He was slouched down and she could see his whole body (except his feet). He was exposing himself and holding his personal part. It was erected.

She hailed a passing police officer. Then, as defendant was coming from the alley, she identified him to the policeman as the man who had driven by. (She also identified defendant in court.)

She was not present when the police officer questioned defendant. Her girl friend had not seen anything unusual. She wasn't looking.

*Ronald Bowkowski,* for the State.

A police officer, he was patrolling in the vicinity and was driving east on Archer when the complainant motioned to him. He immediately turned the car around and stopped at the corner near Menard. The complainant then talked to him and showed him a matchbook cover on which she had written the license number of the car as it had passed.

He then saw a car with this license number coming out of the north alley of Archer, west of Menard, turning south on Menard. He waived the driver to stop, which he did. The complainant identified the driver, who was defendant, as the man who had exposed himself. When he told defendant of this accusation, defendant denied it and stated he was in the neighborhood on his way home from a tavern. Complainant's companion stated that she had not noticed the incident.

*Defendant,* on his own behalf.

He lived at 3228 South Karlov (north and east of the scene of the incident alleged) with his wife, two-year-old son, and infant daughter. On May 26, 1966, he was employed as a wall-to-wall carpet installer at 960 West Chicago Avenue. He left work at 5:00 p. m. and went directly home.

Later, he was coming from his mother-in-law's home at 51st Street and La Porte (also north and east of the scene of the alleged incident) when he was stopped. Before going to his mother-in-law's, he had been at a tavern located on Archer, two blocks west of La Porte. He was arrested at about 7:00 p. m. He was on Menard, coming from 51st Street, approaching Archer to turn west. He was 45 to 50 feet from Archer when he was stopped.

He denied exposing himself.

OPINION

■■ (1), (2) and (3). Defendant filed a written post-trial motion in which he did not mention any of the first three points raised in this court. In view of this, they need not ordinarily be considered. People v. Touhy, 31 Ill2d 236, 240, 201 NE2d 425; People v. Shaw, 89 Ill App2d 285, 294–295, 233 NE2d 73; People v. Fleming, 54 Ill App2d 457, 460–461, 203 NE2d 716. Supreme Court Rule 615(a), however, gives this court the discretion to review plain errors affecting substantial rights, even though they had not been brought to the attention of the trial court. Ill Rev Stats (1967), c 110A, § 615(a). We have, therefore, examined these points, but have found them not to be supported by the record. In any event, the record does not disclose any trial mistakes which appear to qualify as "plain errors" under the rule, nor, in our opinion, as errors at all.

(4) Defendant contends that the complaint was fatally defective because it didn't describe with particularity the culpable conduct with which he is charged. The material portion of the complaint avers, substantially in the language of the statute,

> . . . an act of, [sic] a lewd exposure of the body, Done [sic] with the intent to arouse or satisfy the sexual desires of himself.

376

Defendant maintains that the phrase, "lewd exposure," is too vague to describe that conduct which is proscribed by the statute.

We agree that a complaint must be sufficiently specific to enable the accused to prepare fully for his defense and to plead the judgment in bar to a subsequent prosecution for the same offense. It is also true that charging an accused in the language of a statute might sometimes be insufficient to satisfy this constitutional right. E. g., People v. Barnes, 314 Ill 140, 145 NE 391. We do not, however, agree with defendant that the complaint must identify the part of defendant's body which he is charged with exposing. The statute proscribes a lewd exposing of one's body—not any particular part thereof—with the intent to arouse or satisfy one's sexual desires. Exposure is lewd only when performed with and controlled by the actor's intent. The statute focuses on the subjective mental state. This intent qualification to the lewd exposure provision severely delimits the conduct punishable under the statute, as it is not the intendment of the statute to legislate fashions or mores. See SHA, c 38, § 11–9, Committee Comments.

By this view, the complaint adequately informed defendant of the nature and cause of the accusation. All the authorities he cites for the proposition that the complaint failed to charge an offense with sufficient particularity to support the conviction, construed statutes quite dissimilar from the one here involved. The complaint is satisfactorily specific.

(5) Defendant's last contention is that the evidence does not establish guilt beyond a reasonable doubt because it did not establish every element of the offense. Also, he challenges complainant's credibility.

We have already set forth and commented upon the proscription contained in the statute. Defendant's req-

377

uisite age and the fact that the place where the incident is said to have occurred was public, are undisputed. Evidence of the elements of intent and conduct must be found in complainant's testimony. The record contains the following on her direct examination:

"State's Attorney: In relation to your testimony that he was exposing himself, tell the court what you mean by that.
"Complainant: He was holding himself.
"State's Attorney: What part of himself was he holding?
"Complainant: His personal part.
"State's Attorney: In relation to that personal part, what was the condition of that personal part at that time?
"Complainant: It was erected."

This testimony does not lend itself to any doubt in interpretation. And the inference that defendant had the requisite intent is inescapable. Therefore, the State has met its burden of proof, if complainant's testimony is to be believed.

However, defendant argues that her testimony was the product of an "over-active teenage imagination." He points out that the girl friend noticed nothing, though she stood at complainant's side. Nor does the record indicate whether complainant reacted in such a manner as to make the girl friend aware of the incident as it occurred. Defendant complains also that complainant's opportunity to observe him was severely limited. The car in which he is said to have committed the offense passed in a matter of seconds. (Yet, he does not argue that she did not see into the car, which fact would destroy her competency as a witness, if properly raised. See People v. Dixon, 22 Ill2d 513, 177 NE2d 224.) Defendant contrasts these

378

facts with the facts that he denied the offense when arrested and didn't try to escape the officer when stopped. Thus, he contends, the complainant's testimony is implausible and, therefore, the evidence leaves a grave and abiding doubt of defendant's guilt.

■ ■ Yet, the credibility of testimony is to be determined by the trier of fact. A reviewing court will not upset the trial judge's findings unless they are unreasonable and unsupportable in view of all the evidence. See People v. Clark, 30 Ill2d 216, 195 NE2d 631; People v. Lewis, 30 Ill2d 617, 198 NE2d 812.

[9] We are aware of the psychological factors which sometimes prompt women to make false accusations of sexual offenses. See Wigmore on Evidence (3rd ed), § 924(a) (1960). We are also in accord with the proposition that the evidence in these types of crimes should be subjected to extraordinarily close scrutiny. See People v. Perez, 412 Ill 425, 107 NE2d 749. Where the conviction depends on the complainant's testimony, denied by the defendant, her testimony must be clear and convincing, or corroborated; otherwise, the conviction should not survive review. See People v. White, 26 Ill2d 199, 186 NE2d 351; People v. Mack, 25 Ill2d 416, 185 NE2d 154; and People v. Reaves, 24 Ill2d 380, 183 NE2d 169.

■ Complainant's testimony in this case, however, is clear, consistent and unimpeached. While her reactions may have been unforeseeable, they were not unbelievable. Her testimony that defendant had driven past the corner was corroborated by her having written down his license number accurately. Defendant's story was impeached in a number of ways. He was apprehended coming out of an alley close to the place where complainant said he exposed himself, and he was driving in the opposite direction from that toward which he had headed on passing complainant shortly before. At neither time was he on any reasonably direct route toward home

—his avowed destination.[2] Nor would such a route have taken him past the Archer intersection in the first place. Reviewing all the evidence, we conclude that the trial judge's determination of which witness to believe was amply supported by the evidence and was not unreasonable.

DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.

---

[2] His home is at 3228 South Karlov Avenue, which is 4100 West; his mother-in-law lived at 51st and La Porte Avenue, which is 4900 West. He said he drove on 51st Street to Menard Avenue, which is 5800 West, and intended to turn west on Archer Avenue.