BRUNO PEPE, Appellant, v. THE STATE OF DELAWARE, Appellee.

(*May* 10, 1961.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*John Merwin Bader* for appellant.

*Charles L. Paruszewski*, Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 4, 1961.

WOLCOTT, J.:

This is an appeal from a conviction in the Superior Court on a charge of violating 11 *Del. C.* § 661.

On October 29, 1959, at the instigation of the police, one McCray gave the defendant twenty-five cents to be played on numbers 786 and 789. The defendant accepted McCray's money but did not in exchange give him any slip, ticket or receipt as evidence of his play on the said numbers.

Thereafter, the defendant was arrested and charged in the Municipal Court of Wilmington with violation of 11 *Del. C.* § 661, which reads as follows:

"Whoever sells or disposes of, or has in his possession with intent to sell or dispose of, any lottery policy, certificate, or anything by which such person or any other person promises or guarantees that any particular number, character, ticket, or certificate, shall in the event, or on the happening of any contingency in the nature of a lottery, entitle the purchaser or holder to receive money, property, or evidence of debt; or

"Whoever uses or employs any other device by which such person, or any other person, promises or guarantees as provided in the first paragraph of this section—

"Shall, for a first offense, be fined $100 and in default of payment imprisoned 1 month; and, for a second and all subsequent offenses, be fined $100 and imprisoned not less than 1 nor more than 2 months."

After conviction, defendant appealed to the Superior Court. An information identical in language with that in the Municipal Court was filed. This information is in the following language:

"Bruno Pepe on the 29th day of October, 1959 in the County of New Castle did accept a play of twenty-five cents on the numbers 789 and 786 from Dennis McCray, contrary to Title 11, Section 661 of the *Delaware Code of* 1953."

Following his conviction in the Superior Court, defendant took this appeal, and raised three points for our consideration. The three points are as follows:

1. That there can be no violation of 11 *Del. C.* § 661, unless a ticket or its equivalent is issued to the person making a wager on a number.

2. That the information filed against the defendant is fatally defective.

3. That the trial court abused its discretion in permitting the State to reopen its case after resting in order to present additional evidence to show that the transaction between the defendant and McCray embraced the elements of a lottery.

We take up the defendant's points in the order stated.

Under his first point, defendant concedes that the issuance of a ticket or receipt to the bettor is not an indispensable element of a lottery, but argues that § 661 prohibits only lottery schemes which require the issuance of a ticket or receipt to the bettor. It is thus argued that under the facts of this case no violation of § 661 took place because admittedly the defendant issued no ticket or receipt to McCray.

The question presented is very narrow. In essence, the acceptance of defendant's argument would limit the purview of §661 to the prohibition of lotteries in which invariably a ticket or receipt is issued in exchange for money bet on a chance. Defendant says that the wording of § 661 requires us to so hold. However, we think not.

This statute was first enacted February 19, 1861 (12 *Laws*, Ch. 33) in substantially its present language. The original act was titled, "An Act Concerning Lottery Policies", and was clearly intended to prohibit the conduct of lotteries which theretofore had been prevalent in this State. The act had as its general purpose the prohibition of all lotteries and

not merely, as the defendant argues, the prohibition of the sale of lottery tickets as such. This general legislative purpose seems so clear to us as to warrant no extended discussion. It is clearly indicated by the language, now appearing as the second paragraph of § 661, which would seem to embrace a prohibition against the maintaining of a lottery in any guise.

In view of this general legislative intent—that is, to prohibit all lotteries, and the specific direction that any person who uses "any other device by which" the payment of money is promised or guaranteed upon the happening of a contingency in the nature of a lottery, we think it would be an outrageous emasculation of the statute to confine its ambit solely to instances where the formality of an exchange of a receipt for a wager is made, even though, as in this case, admittedly money was accepted by the defendant to be wagered on a number.

We refuse by a possibly literal construction of the statutory language to give our approval to a scheme obviously designed by numbers writers to circumvent the law, § 661 in our opinion makes it a crime to hold a lottery and to sell chances in it whether or not there is an actual issuance of a ticket or a receipt which, after all, at best is only evidence of the wager or the purchase of a share in the lottery, the selling of which is specifically made the crime.

This is so clear to us that we think no citation of authority is required to support our construction of the statute, but we however note that courts of other states have disposed of similar cases under similar statutes in the same manner. *Cf. State v. Genova*, 141 *Conn.* 565, 107 *A.* 2d 837; *State v. Friedman*, 135 *N. J. L.* 419, 52 *A.* 2d 416, affirmed 136 *N. J. L.* 634, 57 *A.* 2d 390; *State v. Del Vecchio*, 145 *Conn.* 549, 145 *A.* 2d 199.

Defendant cites *Francis v. United States*, 188 *U. S.* 375, 23 *S. Ct.* 334, 47 *L. Ed.* 508, in opposition. That case, however, was a prosecution for the violation of a federal statute prohibiting the transportation over state lines of papers, etc., purporting to be chances, shares and interests in a lottery. It was held that the transportation of duplicate papers retained in the possession of the writer did not violate the statute. We think the case not in point for 11 *Del. C.* § 661, in effect prohibits the holding of a lottery and not merely the dealing with papers.

The second point raised by defendant is that the information filed is fatally defective in that it fails completely to state any of the elements of the offense—that is, the selling of shares in a lottery—since several necessary elements, it is argued, are indispensable items of a lottery, viz., (1) consideration; (2) a prize or reward greater than the amount of the bet, and (3) chance or contingency.

The information filed against this defendant is inartistically drawn and does not conform to the usual pattern of informations and indictments filed in Delaware courts. No longer, however, does the strict rule of the common law with respect to indictments and informations prevail in this State. Indictments and informations in Delaware now are sufficient in law if drawn with such particularity that the accused will be fully informed of the charge he will be required to meet, and, upon the basis of such information, will be given a reasonable opportunity to prepare his defense, and to permit the pleading in future prosecutions of the proceeding as a bar to further prosecution upon the same facts. *State v. Morrow*, 1 *Terry* 363, 10 *A.* 2d 530; *State v. Blendt*, 10 *Terry* 528, 120 *A.* 2d 321, and *State v. Martin, Del. Super.*, 163 *A.* 2d 256. We think the information before us informed the defendant of the precise charge against him.

Furthermore, assuming that the information filed was defective even under the present liberal rule, the attack

on the sufficiency of the information at this time comes too late. Criminal Rule 7(e) of the Superior Court, *Del. C. Ann.*, permits the amendment of an information, as opposed to an indictment, at any time before the verdict, provided that no amendment may be permitted which prejudices substantial rights of a defendant.

If, therefore, the information filed in this case was insufficient to inform the defendant of the crime with which he was charged, an implausible conclusion, upon proper application of the defendant the defective information could have been quashed or dismissed or, by amendment, the State could have corrected any formal deficiencies.

The third and final point raised by the defendant is an abuse of discretion on the part of the trial court in permitting the State to reopen its case after resting.

At the close of the State's case, defendant moved for acquittal on the ground, *inter alia*, that the State had failed to prove the nature and elements of a lottery or, specifically, the so-called numbers game. Upon application of the State therefore, even though the State contends that there was sufficient in the record prior to the motion for acquittal to prove the nature of a lottery, the State was permitted to reopen its case to call as a witness a police officer who described in detail the method of operating a lottery or numbers game. It is this permission now attacked by defendant.

Initially, we note that it is probable that defendant has lost his right to object to the reopening of the State's case since no objection was made on behalf of the defendant during the trial. We, however, do not decide the question upon this basis.

Applications to reopen after resting, particularly before submission of any evidence on behalf of the defendant, are addressed to the discretion of the trial court. *State v. Patnovic*, 11 *Terry* 310, 129 *A.* 2d 780. This being so, the only

function of this court on appeal in review of such a ruling is to inquire whether or not the sound judicial discretion of the trial court has been abused. We think, under the circumstances of this case, there has been no such showing.

For the foregoing reasons, the judgment of conviction below is affirmed.