**STATE of Delaware, Plaintiff,**

**v.**

**Harold AYERS et al., Defendants.**

Supreme Court of Delaware.

Nov. 17, 1969.

Jerome O. Herlihy, Special Deputy Atty. Gen., and Fletcher E. Campbell, Jr., Deputy Atty. Gen., Wilmington, for the State.

Stephen B. Potter, of Sullivan & Potter, Rodney M. Layton, R. H. Richards, III, Martin I. Lubaroff, Richard F. Balotti, of Richards, Layton & Finger, Carl Schnee, Wilmington, for defendants.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

This case comes to us upon Certification under Rule 20 in eighteen pending criminal prosecutions under the Riot Act (11 Del. C., § 363), the full text of which is as follows:

"§ 363. Riot, prima facie evidence; liability for conduct of another

"(a) A person is guilty of riot when he participates with 2 or more persons in a course of disorderly conduct:

"(1) with intent to commit or facilitate the commission of a felony or misdemeanor; or

"(2) with intent to prevent or coerce official action; or

"(3) when the accused or any other participant to the knowledge of the accused uses or plans to use a firearm or other deadly weapon.

"(b) In any prosecution for riot it is prima facie evidence of participation in the riot that the accused was present at the scene of the riot, not assisting to suppress it.

"(c) Whoever violates the provisions of this section shall be guilty of a felony and shall be imprisoned for not less than 3 years nor more than 10 years and shall not be eligible for probation or parole during the first 3 years of his sentence.

"(d) Any person over 16 years old who violates the provisions of this section shall be prosecuted as an adult.

"(e) A person is guilty of an offense under this section, committed by another person, when:

"(1) acting with the state of mind that is sufficient for commission of the offense, he causes an innocent or irresponsible person to engage in conduct constituting the offense; or

"(2) intending to promote or facilitate the commission of the offense he:

"(i) solicits, requests, commands, importunes, or otherwise attempts to cause the other person to commit it; or

"(ii) aids, counsels, or agrees or attempts to aid the other person in planning or committing it; or

"(iii) having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so; or

"(3) his conduct is expressly declared by a statute of this State to establish his complicity.

"(f) In any prosecution for an offense under this section in which the criminal liability of the accused is based upon the conduct of another person pursuant to this section, it is no defense that:

"(1) the other person is not guilty of the offense in question because of irresponsibility or other legal incapacity or exemption, or because of unawareness of the criminal nature of the conduct in question or of the accused's criminal purpose, or because of other factors precluding the mental state required for the commission of the offense; or

"(2) the other person has not been prosecuted for, or convicted of, any offense based on the conduct in question, or has previously been acquitted thereof, or has been convicted of a

different offense or in a different degree, or has legal immunity from prosecution for the conduct in question.

"(g) Disorderly conduct as used in this section means a course of conduct by a person who:

"(1) causes public inconvenience, annoyance, or alarm, or recklessly creates a risk thereof, by

"(i) engaging in fighting or in violent, tumultuous, or threatening behavior; or

"(ii) making an unreasonable noise or an offensive coarse utterance, gesture, or display, or addressing abusive language to any person present; or

"(iii) dispersing any lawful procession or meeting of persons, not being a peace officer of this state and without lawful authority; or

"(iv) creating a hazardous or physically offensive condition which serves no legitimate purpose; or

"(2) engages with at least one other person in a course of disorderly conduct as defined in paragraph (1) of this subsection which is likely to cause substantial harm or serious inconvenience, annoyance, or alarm, and refuses or knowingly fails to obey an order to disperse made by a peace officer to the participants."

The following questions have been certified:

"1. Is 11 Del.C. § 363 unconstitutional and void, in that it violates the due process clause of the Fifth and Fourteenth Amendments of the Constitution of the United States and the due process clause of Article 1, §§ 7 and 9 of the Constitution of the State of Delaware, by reason of the fact that:

"a. It is so vague and indefinite as not to apprise a citizen of the conduct which the statute purports to prohibit?

"b. It is so vague and indefinite as not to fully inform the defendant of the nature and cause of the accusation against him?

"2. Is 11 Del.C. § 363 unconstitutional and void, in that it unduly restricts the right of assembly guaranteed by the First and Fourteenth Amendments of the United States Constitution, and Article 1, § 16 of the Constitution of the State of Delaware, by reason of the fact that:

"a. 11 Del.C. § 363(a) (1) requires a showing that the defendant intended to commit or facilitate the commission of a crime, and a crime these defendants are charged with is the causing of the gathering of a crowd of 10 or more persons in violation of City Ordinance 67–061, Section 1, of the City of Wilmington, Delaware. Is this Ordinance constitutional?

"b. 11 Del.C. § 363(b) makes a participant guilty of a crime if he is present in a riotous assembly and does nothing to assist in suppressing it.

"3. Is 11 Del.C. § 363 unconstitutional and void in that it unduly restricts the right of free speech as guaranteed by the First Amendment of the United States Constitution?

"4. Is 11 Del.C. § 363(c) unconstitutional and void in that the penalties set forth are so cruel and unusual to be a violation of the Eighth Amendment of the Constitution of the United States, and Article 1, § 11 of the Constitution of the State of Delaware, for the reason that it provides a mandatory sentence of three years which may be disproportionate to the crime committed and denies the right to probation and parole during the portion thereof?

"5. Is 11 Del.C. § 363(b) unconstitutional and void, in that it violates the Fourteenth Amendment and the State's police power clause of the Constitution of the United States and the due process clause of Article 1, §§ 7 and 9 of the Con-

stitution of the State of Delaware, by reason of the fact that it predicates guilt on a presumption that does not reasonably follow from the fact to be proven?

"6. Is 11 Del.C. § 363(b) a violation of a citizen's constitutional rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States, and Article 1, § 7 of the Constitution of the State of Delaware, in that it compels a citizen to be a witness against himself by forcing him to testify to overcome a presumption of participation?

"7. Is 11-Del.C. § 363(d) a violation of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States in that it classifies juvenile offenders as adults without any reasonable basis for such classification?"

All of the incidents upon which the indictments against these defendants were founded took place in April, 1968, during the course of rioting, burning, sniping and looting in the City of Wilmington. Beyond this generalization, however, we have no precise factual situation relating to any of the defendants. The questions presented to us, therefore, are to be answered from the face of the statute, alone. The attack upon it is that, as a matter of law, unrelated to any factual situation, it is unconstitutional.

*Question No. 1*

This question raises the issue of whether 11 Del.C., § 363 is violative of due process of law for vagueness in that it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, and differ as to its application.

In Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182, the Supreme Court of the United States reaffirmed its prior ruling in Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322, to the effect that a statute to be void for vagueness must forbid or require "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application". In *Cameron,* a statute prohibiting picketing "in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from" any court house was held constitutional against an attack that it was overly vague. The statute was characterized by the court as a "precise and narrowly drawn regulating statute evincing a legislative judgment that certain specific conduct be * * * proscribed."

■ This rule was recognized as the test of criminal statutes attacked on the ground of vagueness by the Superior Court of this State in State v. Chase, 11 Terry 383, 131 A.2d 178. We make the same recognition.

■ It is not necessary that a statute must with absolute specificity spell out the details of all offenses which are embraced by its terms in order to exclude those offenses which are not proscribed by the statute. The Constitution does not require the impossible of the drafters seeking to proscribe a course of conduct impossible of definition with mathematical preciseness. There may be circumstances which make it difficult to determine whether particular conduct of a particular defendant falls within the statutory proscription, but that is not a sufficient reason to hold the statute void for vagueness. The subject matter of the statute and the object sought to be reached may give content to words which, standing alone, seem obscure and vague. When a case arises on the factual fringe, the courts will see to it that the statute is applied within the limits of a fair understanding of the legislative intent. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877; Robinson v. United States, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944; State v. Smith, 46 N.J. 510, 218 A.2d 147, cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71.

The clear intent of the General Assembly in enacting 11 Del.C., § 363 was to prevent and control riots by redefining the crime and by providing for severe penalties upon conviction. § 363(a) provides that whoever participates with two or more persons in disorderly conduct with the intent to commit or facilitate the commission of a felony or misdemeanor, or with intent to prevent or coerce official action, or, to the knowledge of the accused, when he or another uses or plans to use a deadly weapon, shall be guilty of the felony of riot.

Disorderly conduct is defined in § 363(g) as engaging in any one of the following: (1) fighting; (2) violent, tumultuous, or threatening behavior; (3) unreasonable noise; (4) offensively coarse utterance, gesture or display; (5) abusive language; (6) dispersal of a lawful procession or meeting; (7) creation of a hazardous or physically offensive condition to no useful purpose, which causes public inconvenience, annoyance or alarm, or recklessly creates a risk thereof.

The defendants argue that the definition of disorderly conduct is so vague as to render it impossible for an individual to determine what sort of conduct, if participated in with two or more persons, would be disorderly within the meaning of § 363. They ask, what is "unreasonable noise"; what is the limit of public tolerance to "tumultuous behavior"; what is an "offensive condition"? They recite a series of innocuous acts which they say would fall within the language of § 363, yet none of the recited instances are remotely connected with or concerned with riots. The argument is the familiar argumentative device of *reductio ad absurdum*.

■ We think the error the defendants have fallen into is to insist that § 363 must be interpreted broadly and in accordance with the most sweeping scope of its language so as to include all offenses against the peace. However, it seems obvious to us

that, of necessity, § 363 must be limited by the object it seeks to prevent; i. e., rioting, burning and violence in the public streets. The statute is clearly applicable only to disorderly conduct which reasonably may be considered to inflame a crowd to riot and destroy. Disorderly conduct, no matter how loud and offensive, which cannot within reason so inflame a crowd as to lead it to violence, under no circumstances, can be said to fall within the purview of the statute. If, however, the conduct is such as reasonably to have that effect, then it falls within § 363, provided the other elements required are likewise present.

■ We emphasize that this question comes before us on Certification. We have before us no actual facts beyond the statement that the charges against these defendants grew out of the rioting of April, 1968, in Wilmington. We, of necessity therefore, are confined solely to the statute, itself, and are not concerned with the specific charges placed against any of these defendants. We note, however, from the three sample indictments attached to the Certification that the charges, which vary among the defendants, are committing a riot by participation with two or more persons in disorderly conduct in one or more of the following ways: (1) causing a public alarm; (2) threatening bodily harm to police officers; (3) making unreasonable noise and using abusive language to the police with intent to prevent official action, viz., the dispersal of an unruly group of people; (4) engaging in tumultuous, threatening behavior causing the gathering of an unruly crowd; (5) intending the commission of a felony, viz., murder in the first degree of members of the police; (6) with intent to commit a misdemeanor, viz., assault and battery upon members of the police.

It is obvious to us from the allegations of the indictments that the charges against these defendants are all of a type intended to be covered by § 363, and that they are

the very type of action § 363 is intended to punish, for, if true, they are in fact actions commonly associated with the occurrence of a riot. Confined to such and similar acts, therefore, we are of the opinion that 11 Del. C., § 363 is not unconstitutional by reason of vagueness.

The answer to Question No. 1 is negative.

*Question No. 2*

(a) This question first raises the constitutionality of Wilmington City Ordinance 67–061, Section 1. This ordinance provides in relevant part:

> "SECTION 1. The Mayor of the City of Wilmington is empowered and authorized, whenever he finds that the City, or any part thereof, is in imminent danger of suffering civil disturbance, disorder, riot or other occurrence which will generally, seriously, and substantially endanger the lives, safety, health or property of the public, to proclaim and/or declare a STATE OF EMERGENCY and to do all things necessary to place in effect any or all of the following measures throughout the· City or any part thereof:

> "(a) To prohibit or limit to ten (10) or more the number of persons who assemble or gather in a group on public streets, parks, or other open areas, either public or private, except for recreational purposes at a usual or customary place;"

■ The authority of a municipality to impose regulations in order to protect the public from "occurrences which will generally, seriously, and substantially endanger the lives, safety, health or property" cannot be regarded as inconsistent with civil liberties; but rather, such authority must be regarded as one of the means of safeguarding good order upon which true civil liberties depend.

■ For the reasons discussed in Question 1 and Question 3 regarding 11

Del.C., § 363, we find that Ordinance 67–061 on its face is a proper exercise of police power. And because of the purpose of the ordinance, the discretion granted to the Mayor of Wilmington insists upon a uniform, consistent and nondiscriminatory application of the ordinance.

(b) The issue of the constitutionality of 11 Del.C., § 363, by reason of the fact that it predicates guilt on presence at a riotous assembly, will be discussed under Question No. 5.

The answer to Question No. 2(a) is negative.

*Question No. 3*

This question raises the issue of whether 11 Del.C., § 363 is unconstitutional and void as a violation of the First Amendment of the Federal Constitution guarantee, the right of free speech.

■ The First Amendment guarantees the right of free speech but this does not mean that the State is without authority to regulate conduct adversely affecting the public interest, and indirectly affecting the untrammeled right of free speech. The regulation of speech *per se* without the accompaniment of undesirable conduct may be prohibited by the State only when the speech, itself, creates a clear and present danger of violent public reaction. Terminello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131; Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137.

■ However, when the State in the public interest properly regulates certain forms of conduct, the constitutional right of free speech will not serve to prevent the regulation of the proscribed conduct. The fact that free speech is inseparably mixed up with the regulated conduct, does not constitute a constitutional interdict against the regulation. Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471; Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834. As was said in Cameron v. Johnson, 390 U.S. 611, 88 S.

Ct. 1335, a prohibition against picketing and mass demonstration does not abridge free speech when the "activity bears no necessary relationship to the freedom to * * * distribute information or opinion."

 In our answer to Question No. 1 we have stated that 11 Del.C., § 363 is not unconstitutional by reason of vagueness, and that its application is limited by the legislative purpose behind the statute, i. e., the prevention of riots. It therefore follows that the statute seeks to regulate conduct to "vindicate important interests of society." * The consequential result that absolute freedom of speech may be impinged upon by such regulation is of no moment.

The answer to Question No. 3 is negative.

*Question No. 4*

 This question raises the issue of whether or not the mandatory minimum sentence imposed by § 363(c) of three years' imprisonment with no probation or parole to be granted is unconstitutional under the Eighth Amendment of the Federal Constitution and Article I, § 11 of the Delaware Constitution prohibiting cruel and unusual punishments.

With respect to Article I, § 11 of the Delaware Constitution the question finds its answer in State v. Cannon, 5 Storey 587, 190 A.2d 514, in which this Court held that the fixing of penalties for crime was a matter for determination by the General Assembly as the voice of the people, and that its action, within the traditional limitations of forms of punishment will not be struck down by the courts.

Since Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758, however, the Eighth Amendment has been made binding on the states, and the answer to the question must be given in the light of the Eighth Amendment. In Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793, the Supreme Court of the United States overturned a Philippine statute imposing a sentence of from 12 to 20 years for entry of a known false statement in a public record. The reason given was that the gross disparity between the penalty for the known false entry and the penalties imposed for other more serious crimes made it a cruel and unusual punishment. The case stands for the proposition that when the penalty for a crime, essentially similar to other crimes, is a grossly more severe penalty, it may constitute cruel and unusual punishment. The question of whether it is or not is a relative one.

The application of the rule of *Weems* confirms this analysis. For example, in Halprin v. United States (9th Cir.) 295 F. 2d 458, a statute punishing narcotics offenses which eliminated the right to parole was upheld against an attack that it was a cruel and unusual punishment in violation of the Eighth Amendment. To similar effect is Kasper v. Brittain (6th Cir.) 245 F.2d 92.

We think the minimum penalty imposed by § 363(c) is not so disproportionate to the offense of riot as to be completely arbitrary and shocking to a sense of justice. It is common knowledge today that urban riots, at the prevention of which § 363 is directed, are accompanied by violence, destruction, and a complete disregard of the law and the rights of others. As such, riot is a serious crime for which the General Assembly, if it so desires, may provide severe penalties.

The answer to Question No. 4 is negative.

*Question No. 5*

 This question raises the constitutionality of 11 Del.C., § 363(b) which provides that presence at the scene of a riot,

---

* Cox v. Louisiana, 379 U.S. at 564, 85 S.Ct. at 481.

not assisting to suppress it, shall be *prima facie* evidence of participating in the riot.

We think the clear effect of § 363(b) is to raise a presumption against a person at the scene of a riot that he is participating in disorderly conduct with two or more persons, with the necessary intent required by § 363(a); in other words, that he is guilty of the crime of riot. The only rebuttal permitted of the presumption is proof that the person was actively seeking to suppress the riot.

The question is controlled by the recent decision of the Supreme Court of the United States in Leary v. United States, 89 S. Ct. 1532, 395 U.S. 6, 23 L.Ed.2d 57. In that case it was held that a criminal statutory presumption is irrational and arbitrary and, thus, unconstitutional unless, at least with assurance, it can be said that "the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." The precise statute before the court in *Leary* was one making it a crime to knowingly import marijuana into the United States. 21 U.S.C., § 176a, the statute held unconstitutional, raised a presumption from mere possession of knowledge of the illegal importation.

With respect to 11 Del.C., § 363(b), we think the same irrationality and arbitrariness is present in the presumption of participation raised from mere presence. We do not think the presumed fact "is more likely to flow than not to flow" from the fact of presence. We point out that to be proven guilty of riot a person must have the intent required by § 363(a) (1) and (2) or the knowledge required by § 363(a) (3). It seems to us that mere presence at the scene, in view of many innocent reasons for that presence, cannot be made the basis for an almost irrebutable presumption.

Accordingly, we think § 363(b) is unconstitutional and void. This conclusion, however, will not serve to void the entirety of § 363 since the remaining portions are in no way dependent on subsection (b). The remainder is complete in itself and capable of being executed in accordance with the apparent legislative intent. Clendaniel v. Conrad, 3 Boyce 549, 83 A. 1036.

The answer to Questions 5 and 2(b) is affirmative.

*Question No. 6*

This question raises the issue of whether an individual's rights under the First, Fifth and Fourteenth Amendments to the Federal Constitution are violated by having the effect of compelling him to be a witness against himself to overcome the presumption raised by § 363(b) from his presence at the scene.

We think the question has become moot by reason of our answer to Question No. 5 holding § 363(b) unconstitutional and void. There is no remaining provision of § 363 raising the presumption and therefore the basis for the question does not exist.

We accordingly decline to answer Question No. 6.

*Question No. 7*

The issue under this question is whether the direction to charge persons between the ages of sixteen and eighteen as adults is a violation of the Equal Protection Clause of the Fourteenth Amendment of the Federal Constitution.

It is no novelty in our law to require that for certain crimes juveniles shall be tried as adults in the Superior Court. At the present time, juvenile offenders can be tried in the Superior Court for murder in the first degree, rape, kidnapping, and for the possession or use of molotov cocktails. Brooks v. Taylor, 2 Storey 138, 154 A.2d 386; 10 Del.C., § 957; 11 Del.C., § 360.

Furthermore, there are currently pending in the General Assembly bills which have passed one House, to materially add to the list of crimes for which juveniles over sixteen years will be tried as adults. The matter, that of age classification for purposes of indictment and trial, has always been for the decision of the General Assembly, the policy-making branch of the State Government.

The discretion of the General Assembly in setting policy under its police power is, however, not absolute. It may not be arbitrary or capricious; it must be reasonable. When the power is exercised to classify for purpose of trial for crimes, as this is, then the classification must be founded on differences reasonably related to the purposes of the statute in which the classification is made. Morey v. Doud, 354 U. S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485. Is, therefore, the direction that everyone over the age of 16 years be treated as an adult when charged with the crime of riot reasonably related to the purposes of 11 Del.C., § 363? We think so.

The purpose of 11 Del.C., § 363 basically is to control riots by providing for more severe penalties for the crime. An individual between the ages of 16 and 18 is as capable of violent action as is an older individual. When a juvenile participates in such action, he may properly be considered as having forfeited his special status under the law. The General Assembly was obviously of this opinion, and provided for it.

We have no doubt but that in lowering the age limit for trial as an adult for the crime of riot, the General Assembly was acting within its sound discretion since there is a reasonable relationship between the lowering of the age limit and the control of riots, or it is at least debatable. In either event, the legislative action cannot be classed as arbitrary or capricious.

The answer to Question No. 7 is negative.