**STATE of Delaware**

**v.**

**Bruce D. DALLY.**

Superior Court of Delaware,
New Castle.

Dec. 8, 1970.

James A. Erisman, Deputy Atty. Gen.,
Wilmington, for the State.

Henry A. Wise, Jr., Wilmington, for the
defendant.

QUILLEN, Judge.

In 1969, the New Castle County Grand
Jury charged Bruce D. Dally with the un-
lawful possession of central nervous sys-
tem depressant and stimulant drugs in vio-
lation of 16 Del.C. § 4902(c). Specifical-
ly, the indictment alleges that the defend-

ant possessed trifluoperazine, stelazine, chloral hydrate and butabarbital.

The definition of a central nervous system depressant or stimulant drug is found in 16 Del.C. § 4901 as follows:

"(1) Any drug which contains any quantity of (A) barbituric acid or any of the salts of barbituric acid; or (B) any derivative of barbituric acid which has been designated under § 502(d) of the Federal Act as habit-forming;

(2) Any drug which contains any quantity of (A) amphetamine or any of its optical isomers; (B) any salt of amphetamine or any salt of an optical isomer of amphetamine; or (C) any substance designated by regulations promulgated under the Federal Act as habit-forming because of its stimulant effect on the central nervous system; or

(3) *Any natural or synthetic mixture or compound that induces the effect of a barbiturate, amphetamine, or hypnotic or somnifacient drug* or which contains any quantity of a substance which the State Board of Health has found to have, and by regulation designates as having a potential for abuse because of its depressant or stimulant effect on the central nervous system;[1] or

(4) Any drug which contains any quantity of a substance designated by regulations promulgated under the Federal Act as having a potential for abuse because of its depressant or stimulant effect on the central nervous system."

The defendant moves to dismiss the indictment on the ground that the above definition is unconstitutionally vague. The State contends that the defendant lacks standing to contest the validity of the statute and that it is specific enough to satisfy due process of law. A hearing was held on July 16, 1970, and the matter was briefed following the hearing.

The indictment does not allege which portion of the definition is relied upon by the possession of the substances listed in the indictment. In this technical area, and with this multiple definition, it would certainly be the better practice to designate in some way the statutory class of prohibited depressant or stimulant drugs which includes the drugs specifically alleged.

In this regard, I note preliminarily that the statutory definition in part refers to certain Federal legislation and regulations and to State Board of Health regulations for its definition of prohibited drugs. The question may then arise as to whether the particular drugs listed in this indictment fall within any of the lists contained in the Federal statutes or the Federal State Board of Health regulations. No evidence was presented by the State in this regard. And I do not think this question must be faced.

Even if trifluoperazine, stelazine, chloral hydrate and butabarbital are proscribed by a Federal or State list, the indictment must set forth, with particularity, which statutory list is violated to fully inform the defendant of the offense charged. Without such information, a defense cannot adequately be prepared.

While an indictment or information is generally sufficient if the offense is charged in the words of the statute, this rule does not apply where the words of the statute do not in themselves fully, either expressly, or by necessary implication, without uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. See State v. Allen, 10 Terry 150, 112 A.2d 40 at 42 (Super.Ct.1955); State v. Vandenburg, 9 W.W.Harr. 498, 2 A.2d 916 at 920 (Gen. Sess.1938); 41 Am.Jur.2d, Indictments and Informations, §§ 89, 93.

If the intent here was to allege that the drugs specified fall within categories

---

1. Emphasis added. The italicized portion is hereinafter sometimes referred to as the first part of category (3).

(1)(B) or (2)(C) or that portion of (3) referring to regulations of the State Board of Health, or (4), I do not think the indictment is sufficient because the defendant cannot know from the face of the indictment which statute or regulation makes the possession of the drug alleged illegal. To put it another way, since this statute incorporates several sources for portions of the definition of a prohibited drug, the indictment, if it relies on an incorporated source, must specifically include what source is being relied upon because the general descriptive words in the statute and the name of the drug do not in themselves fully and without uncertainty or ambiguity set forth all the elements necessary to constitute the offense.

I turn now to the Constitutional question. Every statute is clothed by the presumption of constitutionality. Collison v. State ex rel. Green, 9 W.W.Harr. 460, 2 A.2d 97 (Supr.Ct.1938); State v. Brown, 6 Storey 571, 195 A.2d 379 (Supr.Ct.1963); Fraternal Order of Firemen of Wilmington, Delaware, Inc. v. Shaw, 41 Del.Ch. 399, 196 A.2d 734 (Supr.Ct.1963). Courts presume every legislative act constitutional and indulge every intendment in favor of validity. Downs v. Jacobs, Del.Supr., 272 A.2d 706 (1970). These standards must be borne in mind as the record in this case is examined.

There was expert testimony taken at the hearing. Leonard Bednarczyk, who is a toxicologist employed by the State Department of Health and Social Services, testified as to the nature of the substances listed in the indictment. On the basis of his testimony, certain key facts were established. First, stelazine is the trade name for trifluoperazine and therefore the allegation of both of those substances is duplicitous. Stelazine, chloral hydrate, and butabarbital are central nervous system depressants. Stelazine is a tranquilizer. Chloral hydrate and butabarbital are somnifacient and hypnotic drugs. Stelazine and chloral hydrate fall within the first part of the definition of category (3) in that they are compounds that induce the effect of a hypnotic or somnifacient drug. Butabarbital, a derivative of barbituric acid, could fall within the definition contained in category (1) (B) as well as the definition contained in the first part of (3) since it induces the effect of a barbiturate.

■ Turning specifically to the first part of category (3) of the definition, the State's first argument is that since Dally is charged with possession of trifluoperazine, stelazine, chloral hydrate and butabarbital, which are clearly central nervous system depressants, the statute is not vague as to him and he, consequently, cannot question it. But this language does directly concern Dally's rights. Since the statute does not mention any of the substances in the Dally indictment, his possession is illegal only if the general language of the first part of category (3) extends to proscribe them. This is not a case where the defendant is attacking a classification portion of the statute not being relied upon by the State. Compare Wilson v. State, Del.Supr., 264 A.2d 510 (1970). Nor is this a case where the limits of definition and legislative intent are clearly apparent by the use of particular language in a criminal law even though such language may have other conceivable implications in other contexts. Compare State v. Jackson, Del.Super., 239 A.2d 215 (1968). Nor is this a case where the defendant is merely arguing that hypothetically the statute could be applied in an unconstitutional manner. Compare Wiggins v. State, Del.Supr., (November 27, 1970). In this case, the State is relying on the very statutory classification that the defendant attacks. His rights are adversely affected. He has standing. Wilson v. State, *supra*.

■ The next question for decision is whether the definition in category (3) of a central nervous system depressant or stimulant drug as "any natural or synthetic mixture or compound that induces the effect of a barbiturate, amphetamine, or hypnotic or somnifacient drug * * *" is sufficiently precise.

Penal statutes which create new offenses "must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties * * *". State v. Robinson, Del.Supr., 251 A.2d 552 at 554 (1969). See also State v. Chase, 11 Terry 383, 131 A.2d 178 at 180 (Super.Ct.1957). If a statute forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, then it violates due process of law. State v. Robinson, *supra*; State v. Ayers, Del. Supr., 260 A.2d 162 at 166 (1969); State v. Deedon, 6 Storey 49, 189 A.2d 660 (Sup.Ct.1963).

Applying these tests to the case at hand, the first part of category (3) is void for vagueness. The statute does not explain what is meant by "any natural or synthetic mixture or compound". Reference is made, in 16 Del.C. § 4901, to 16 Del.C. § 4701 for a general definition of "drug". This provision states the meaning of "drug" to include, among other definitions, the following: "articles (other than food) intended to affect the structure of any function of the body of human or other animals." 16 Del.C. § 4701, Drug (c).

A number of commonly sold stimulants and depressants qualify as "drugs" and as natural or synthetic mixtures or compounds which have the effect of a "Barbiturate, amphetamine or hypnotic or somnifacient drug". The State toxicologist testified that sleep producing depressants such as Sleep-Ez, Dream-Ez, and Nytol fall within such a classification. Antimotion sickness "drugs" including marezine, bonamine, and dramamine are central nervous system depressants, which, in sufficient quantities, produce somnifacient effects. Alcoholic beverages, containing ethyl alcohol, operate as depressants and induce somnifacience. Paregoric is a central nervous system depressant. Caffeine, nicotine, no-doz and hot chocolate act as stimulants and are also comprehended within the statutory definition.

The State argues that the object and intent of the statute gives additional meaning to the definition. See State v. Ayers, *supra*. Category (3), however, does not contain a specific definition and does not adequately inform individuals of the unlawful conduct which it attempts to cover. Men of uncommon intelligence, such as a toxicologist, must necessarily guess at what the statute purports to prohibit. The purpose of the statute is to regulate the use, sale and manufacture of central nervous system depressant or stimulant drugs. This object is broad and does not add specificity to what is forbidden. Indeed, reference to the meaning of "drug", as understood by 16 Del.C. § 4701(c), to ascertain what classes of drugs the statute intends to regulate, adds ambiguity but not certainty. The definition in the first part of section (3) is so uncertain that it is meaningless.

The State suggests that the phrase in the second part of category (3) which authorizes the State Board of Health to designate by regulation drugs which have a "potential for abuse" supplies adequate standard. The assumption is that the rationale of Federal cases which have sustained the power of the Secretary of Health, Education and Welfare to designate drugs which have a "potential for abuse" under a similar national act is persuasive, by analogy, to validate the second part of category (3). The two Federal opinions cited, White v. United States, 395 F.2d 5 (1st Cir. 1968) and Iske v. United States, 396 F.2d 28 (10th Cir. 1968), hold that "potential for abuse" constitutes a certain standard to sustain the delegation of legislative authority. But these decisions do not speak to our problem. As noted above if reference to regulations is required, it should be specified in the indictment. Moreover, no list of the State Board of Health has been shown to exist.

■ I find that the first part of the definition in category (3)——"any natural or synthetic mixture or compound that induces the effect of a barbiturate, amphetamine, or hypnotic or somnifacient drug"——

is unconstitutionally vague. Since that portion alone can support the charge insofar as trifluoperazine, stelazine and chloral hydrate are concerned, the charge of possession of those substances as contained in the indictment is invalid.

Some further comment is needed in regard to the alleged possession of butabarbital. The toxicologist testified it is a derivative of barbituric acid and therefore it could fall within the definition contained in category (1) (B) if it has been designated as required and if it had been so alleged. But the designation was not alleged and therefore, as noted above, a necessary element of the indictment is missing.

On one point, however, the record needs clarification. I assume that butabarbital, as a derivative of barbituric acid, is different than a drug which contains barbituric acid or any of the salts of barbituric acid. Therefore, I assume butabarbital does not fall within category (1)(A). If I am wrong in this assumption, the State should make a further application as soon as possible.

■ The indictment is defective in another aspect which has been touched upon. I will deal with it in case my assumption about butabarbital not falling within category (1) (A) is erroneous. The drugs are listed in the indictment as "triflerperazine, stelazine, cloral hydrate and butabitibal". Thus, three of four are misspelled. As indicated, in the light of this opinion, the Court only has to concern itself with the spelling of butabarbital as "butabitibal". It has at least been suggested that this defect is fatal. It may be the wisest course to reindict rather than run the risk of reversible technical error. I am satisfied, however, that the defect is not fatal under the circumstances of this case.

■

An indictment is sufficient if it notifies the defendant of the charges pending against him, so that he can prepare his case, and if judgment on the indictment can be pleaded to bar subsequent prosecution for the same offense. State v. Lasby, 4 Storey 39, 174 A.2d 323 (Super.Ct.1961); Pepe v. State, 3 Storey 417, 171 A.2d 216 (Sup.Ct.1961); Holland v. State, 6 Storey 551, 194 A.2d 698 (Sup.Ct.1963). Clerical or formal errors in the indictment may be corrected but not substantial ones. State v. Blendt, 10 Terry 528, 120 A.2d 321 (Super.Ct.1956); 4 Wharton, Criminal Law & Procedure § 1877–1878. Substantive error is committed where the indictment does not inform defendant of the offense and fails to protect him against double jeopardy. State v. Blendt, *supra*; Pepe v. State, *supra*; Holland v. State, *supra*. Here, the misspelling is a clerical error that can and should be amended. It is clear that the toxicologist had no trouble recognizing the misspelling. The defendant was not mislead in his defense nor prejudiced in the preparation of his case. Judgment on the indictment would preclude later prosecution for possession of butabarbital arising under the same facts. The indictment, therefore, is sufficient in law in this respect and should not be dismissed for a clerical error. People v. Gardner, 74 Ill.App.2d 83, 220 N.E.2d 59 (1966).

The indictment will be dismissed for vagueness as to trifluoperazine, stelazine, and chloral hydrate. If the assumption made as to butabarbital is correct, the indictment will be dismissed for vagueness in its entirety.

Mr. Wise is directed to present, on notice, an order.