**Charles S. MILLER, Defendant below, Appellant,**

v.

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Submitted April 12, 1977.

Decided May 5, 1977.

Arlen B. Mekler, Asst. Public Defender, Wilmington, for defendant below, appellant.

Charles M. Oberly, III, State Prosecutor, Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

Defendant appeals his conviction by a Superior Court jury of one count of riot, 11 *Del.C.* § 1302,[1] contending that the Riot Statute is unconstitutional as applied to the facts and circumstances of his case. We disagree.

---

1. 11 *Del.C.* § 1302 provides in pertinent part:

   "A person is guilty of riot when he participates with 2 or more persons in a course of disorderly conduct:

   "(1) With intent to commit or facilitate the commission of a felony or misdemeanor; or

   "(2) With intent to prevent or coerce official action; or

   "(3) When the accused or any other participant to the knowledge of the accused uses or plans to use a firearm or other deadly weapon."

## I.

A young black girl was shot and seriously wounded by a white adult male who claimed she was picking peaches from his trees.[2] The man who shot the girl was charged for the shooting and released on bail, while awaiting trial. Angered by his release, the black community began demonstrating and scheduled a mass rally in Wilmington's Rodney Square to demand the jailing of the man.

Approximately three hundred persons attended the rally, which defendant, a civic leader of some stature in the community, addressed with a bullhorn. According to testimony of police, who were in close proximity to the rally to prevent any unlawful conduct by the crowd, defendant exhorted the gathering to mobilize and march on the "Mayor's-Million-Dollar-Mall," to "take the Mayor's Mall," to "break through the pigs," and to "pick your pigs." Much of the police testimony was controverted by defendant, although he admitted the use of such terms as "killer cops" and "take the Mayor's-Million-Dollar-Mall."

The crowd was dispersed by the police, who subsequently arrested defendant on charges of riot arising out of his conduct at the rally. The Grand Jury of New Castle County indicted defendant on three counts of riot; he was convicted upon the following count:

". . . [that he] did then and there participate with two or more persons in a course of disorderly conduct with the intent to prevent the official action of the Wilmington Bureau of Police in ordering the crowd to disperse at 8th and Market Streets, in the City of Wilmington, by encouraging the crowd over the bull-horn (sic) not to disperse, to break through the police lines; to scare the police horses by clapping their hands in the horses (sic) faces intentionally causing public inconvenience, annoyance and alarm to another by engaging in violent, tumultuous bottle throwing and threatening behavior."

2. On August 30, 1975, the victim died of the wounds received in the shooting. See *Bailey v.*

## II.

Defendant asserts that the Riot Statute is unconstitutionally overbroad as applied to the facts and circumstances of this case, hinging his argument on the premise that "the jury could have convicted [him] without determining that he intended to incite imminent lawless action . . ." He contends that if his version of the facts had been accepted, that he only used such terms as "killer cops" and "take the Mayor's-Million-Dollar-Mall," his conduct amounted only to constitutionally protected "political hyperbole." See *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). Therefore, he argues, his conviction under the Riot Statute could have been for protected conduct and should be overturned.

■ We conclude that defendant's conduct, even if his version of the facts is accepted as correct, does not fall within the category of "political hyperbole." In *Watts v. United States,* supra, the petitioner attended a rally on the Washington Monument grounds, which broke up into small discussion groups. The petitioner joined a group discussing police brutality, and one of the participants suggested that young people should get more education before expressing their views, to which the petitioner responded. According to an investigator for the Army Counter Intelligence Corps:

" 'They always holler at us to get an education. And now I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.' 'They are not going to make me kill my black brothers.' " 394 U.S. at 706, 89 S.Ct. at 1401, 22 L.Ed.2d at 666.

The petitioner was prosecuted for his statement under a federal law making it a

*State,* Del.Supr., 363 A.2d 312 (1976).

crime to threaten the life of the President of the United States. In reversing his conviction, the Court characterized the petitioner's conduct as "political hyperbole," noting that the statement was expressly conditioned on an event the petitioner vowed would never occur and was greeted by laughter from the audience. 394 U.S. at 708, 89 S.Ct. at 1402, 22 L.Ed.2d at 667.

In the present case the defendant did not condition his statements on the occurrence of future events nor was his conduct greeted by laughter; to the contrary, he admitted exhorting an angry crowd to take the "Mayor's-Million-Dollar-Mall" in a tense circumstance where police were attempting to prevent unlawful disturbances. The Court in *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), stated:

> ". . . [T]he constitutional guarantees of free speech and free press do not permit a state to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." 395 U.S. at 447, 89 S.Ct. at 1829, 23 L.Ed.2d at 434 (footnote omitted).

We find there was an incitement to lawless action likely to produce that result.

The facial constitutionality of the riot statute was upheld in *State v. Ayers,* Del.Supr., 260 A.2d 162 (1969), and that decision is dispositive of this appeal. There is a degree of exactness to which statutes of this type must attain to meet constitutional requirements, and that degree is met by the riot statute. As was stated in the *Ayers* decision: "When a case arises on the factual fringe, the courts will see to it that the statute is applied within the limits of a fair understanding of the legislative intent." 260 A.2d at 166. This case did not approach that factual fringe; rather it presented a situation which the statute was specifically designed to remedy.

Affirmed.