IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CELINE BRIGGS, | § | |
| | § | No. 446, 2022 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. 22-06-08TN |
| DEPARTMENT OF SERVICES | § | |
| FOR CHILDREN, YOUTH, AND | § | Petition No. 22-11940 |
| THEIR FAMILIES/DIVISON OF | § | |
| FAMILY SERVICES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: September 20, 2023
Decided: October 30, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, and **GRIFFITHS**, Justices.

## **ORDER**

On this 30th day of October, 2023, after consideration of the briefs and the record below, it appears to the Court that:

(1)     The appellant, Celine Briggs[1] ("Mother"), appeals from a Family Court order dated November 4, 2022, terminating her parental rights as to her child born March 27, 2021 (the "Child").  Mother raises two issues on appeal.  First, she argues that the Family Court abused its discretion when it found that she failed to plan for

---

[1] The Court previously assigned a pseudonym to the appellant pursuant to Supreme Court Rule 7(d).

the Child's "physical needs or mental and emotional health and development" under 13 *Del. C.* § 1103(a)(5). Second, she contends the Family Court abused its discretion by improperly weighing the evidence while evaluating best interests factors three, five, six, and eight under 13 *Del. C.* § 722(a) and ultimately finding that termination was in the best interests of the Child. For the reasons that follow, we conclude that the Family Court's judgment is affirmed.

(2) On June 2, 2021, when the Child was less than four months old, the Department of Services for Children, Youth, and Their Families/Division of Family Services ("DFS") sought and received custody of the Child via an emergency *ex parte* order. The Family Court granted the emergency order because the Child was exposed to fentanyl as a result of Mother's substance abuse. Following a preliminary protective hearing on June 9, 2022, DFS retained custody with a permanency plan of reunification and placed the Child with a foster family. The Child remained in the care of her foster family throughout Mother's Family Court proceedings.

(3) Prior to the dispositional hearing on October 1, 2021, DFS provided Mother with a case plan. The case plan outlined the goals Mother needed to achieve before reunification with the Child could occur. These goals included: (1) completing a mental health evaluation and following any recommended treatment; (2) completing a substance abuse evaluation and following any recommended treatment; (3) completing a parenting class and providing DFS with a certificate of

2

completion; (4) exhibiting appropriate parenting behaviors; (5) obtaining and maintaining consistent legal employment; and (6) securing and maintaining stable housing.

(4) Mother made progress on her case plan. But, at the time of the second review hearing on February 18, 2022, she had tested positive for fentanyl and had yet to obtain stable housing. Accordingly, on March 11, 2022, DFS filed a motion to change the permanency plan from reunification to termination of parental rights. And on June 14, 2022, DFS filed a petition for the termination and transfer of parental rights against Mother. The grounds for termination of Mother's parental rights were failure to plan for the Child's physical needs or mental and emotional health and development under 13 *Del C.* § 1103(a)(5).

(5) The Family Court held a two-day termination and transfer of parental rights hearing on September 19, 2022, and October 7, 2022. Testimony was taken from Mother as well as DFS employees who had worked with Mother while the Child was in DFS custody. At the hearing, DFS conceded that Mother had completed the mental health and employment elements of her case plan but explained that she had failed to maintain stable housing, failed to consistently test negative for illegal substances, and failed to complete a parenting class. DFS argued that termination of Mother's parental rights would be in the Child's best interests because it would allow the Child to be adopted by her long-term foster family. In

3

her testimony, Mother maintained that she had been substance free for nearly six months at the time of the hearing and was making steady progress on all facets of her case plan.

(6)     On November 4, 2022, the Family Court issued an order terminating Mother's parental rights to the Child.  The court found that statutory grounds for termination existed under 13 *Del C.* § 1103(a)(5) because the Child had been in DFS custody for at least one year and Mother had failed to obtain stable housing, failed to remain substance free, and had failed to exhibit appropriate parenting behaviors as required by her case plan.  The Family Court further found that termination of Mother's parental rights was in the Child's best interests after weighing each of the 13 *Del. C.* § 722(a) best interests factors and finding that factors three, four, five, six, and eight all weighed heavily in favor of terminating Mother's parental rights.

(7)     When reviewing a decision of the Family Court to terminate parental rights, this Court conducts a "review of the facts and law, as well as the inferences and deductions made by the trial court."[2]  "Conclusions of law are reviewed *de novo*."[3]  When the trial judge has correctly applied the appropriate law, our review is limited to an abuse of discretion.[4]  "To the extent that the issues on appeal

---

[2] *Powell v. Dep't. of Servs. for Child., Youth & Their Fams.*, 963 A.2d 724, 730 (Del. 2008).
[3] *George v. Dep't of Servs. for Child., Youth & Their Fams.*, 150 A.3d 768, 2016 WL 6302525, at *4 (Del. Oct. 27, 2016) (ORDER).
[4] *Powell*, 963 A.2d at 731.

implicate rulings of fact, we conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly wrong."[5] "[T]his Court will not substitute its own opinion for the inferences and deductions made by the [t]rial [j]udge where those inferences are supported by the record and are the product of an orderly and logical deductive process."[6]

(8) Under Delaware law, the Family Court must conduct a two-step analysis when deciding whether to grant a DFS petition for termination of parental rights.[7] First, the court must determine whether there is clear and convincing evidence that one of the grounds for termination enumerated in 13 *Del. C.* § 1103(a) has been met.[8] If one of the grounds has been met, the trial judge must next determine if there is clear and convincing evidence that termination of parental rights is in the best interests of the child.[9] Mother challenges both steps of the Family Court's analysis.

(9) First, because Mother does not dispute the Family Court's finding that she failed to exhibit appropriate parenting behaviors as required by her case plan, Mother waives the issue and concedes that the Family Court did not abuse its discretion when it found she failed to plan under 13 *Del. C.* § 1103(a)(5). Under

---

[5] *Id.*
[6] *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983).
[7] *Powell*, 963 A.2d at 731.
[8] *Id.*
[9] *Id.*

Supreme Court Rule 14(b)(vi)(2), "[t]he merits of any argument that is not raised in the body of the opening brief [is] deemed waived and will not be considered by the Court on appeal."[10] Accordingly, this Court has held that an appellant's opening brief must fully state the grounds for appeal, as well as the "arguments and supporting authorities on each issue or claim of reversible error."[11] An appellant's failure to "present and argue a legal issue in the text of an opening brief constitutes a waiver of that claim on appeal."[12]

(10) Further, under 13 *Del. C.* § 1103(a)(5), a parent has failed to plan for a child in DFS custody when there is clear and convincing evidence that the parent "is not able or has failed to plan adequately for the child's physical needs or mental and emotional health and development . . . ."[13] Where the statutory basis for termination is a failure to plan, the Family Court must also find the existence of at least one additional condition enumerated in Section 1103(a)(5).[14] In a "proper decision on the termination of parental rights[,]" "the crucial factor should be the child's welfare,

---

[10] Sup. Ct. R. 14(b)(vi)(2).

[11] *Roca v. E.I. du Pont de Nemours & Co.*, 842 A.2d 1238, 1242-43 (Del. 2004) (citing *Turnbull v. Fink*, 644 A.2d 1322, 1324 (Del. 1994)).

[12] *Id*. (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993)).

[13] 13 *Del. C.* § 1103(a)(5); *Powell*, 963 A.2d at 731.

[14] *Boyer-Coulson v. Div. of Fam. Servs.*, 45 A.3d 148, 2012 WL 1944868, at *2 (Del. May 30, 2012) (ORDER). Here, the Family Court found by clear and convincing evidence that the Child had been in DFS custody for at least one year. App. to Opening Br. at A505. Mother has not appealed this aspect of the court's ruling.

both material and psychological."[15]  Therefore, if a parent has failed to fulfill any requirement of their DFS case plan necessary to provide adequate care for their child, 13 *Del. C.* § 1103(a)(5) will be satisfied even where a parent has otherwise completed their case plan.[16]

(11)  Here, Mother's failure to dispute the Family Court's determinations as to each failed element of her case plan constitutes a waiver of the issue.  In its order, the Family Court found Mother's parenting behaviors did not comport with her case plan due to Mother's belief that she did not need to take a parenting class despite the Child's exposure to an "illicit substance" during a previous supervised visit.[17]  The court found that Mother's attitude and behaviors constituted a failure to "demonstrate[] parenting practices that create safety for Child . . . ."[18]  At no point does Mother's opening brief attempt to challenge the court's finding or make specific mention of her parenting practices and behaviors.  Because making "no

---

[15] *In re Three Minor Child.*, 406 A.2d 14, 17 (Del. 1979) (quoting Homer H. Clark, Jr., *Law of Domestic Relations* § 18.5 (1968)).

[16] *See, e.g.*, *Griffin v. Dep't of Servs. for Child., Youth & Their Fams.*, 296 A.3d 882, 2023 WL 3046056, at *2 (Del. Apr. 21, 2023) (ORDER) (holding termination of parental rights supported by the record where parent failed only to obtain stable housing as required by case plan); *Arthur-Lawrence v. Div. of Fam. Servs.*, 884 A.2d 511, 2005 WL 2397523, at *3-6 (Del. Sept. 27, 2005) (ORDER) (holding termination of parental rights supported by the record where parent failed to complete two parts of a seven-part case plan); *George*, 2016 WL 6302525, at *4-5 (holding termination of parental rights supported by the record where parent completed twenty-five percent of their case plan); *Whitmore v. Robinson*, 223 A.3d 417, 425-26 (Del. 2019) (Seitz, C.J., concurring) (noting Family Court often terminates parental rights solely on a failure to satisfy their DFS provided case plan).

[17] App. to Opening Br. at A497-98.

[18] *Id.*

specific mention of a legal issue is insufficient" to preserve an issue for appeal, Mother has conceded she failed to complete the parenting behaviors portion of her case plan and, as a result, that the Family Court did not abuse its discretion in finding 13 *Del. C.* § 1103(a)(5) satisfied.[19]

(12) Second, the Family Court did not abuse its discretion when it held that termination of Mother's parental rights was in the Child's best interests because its determinations under 13 *Del. C.* § 722(a) were the product of an orderly and logical deductive process and are supported by the record. "Under the best interests standard, there must be 'clear and convincing' evidence that termination of parental rights is essential to the child's welfare."[20] Section 722(a) "governs the Family Court's best interests determination in a termination of parental rights proceeding and provides factors that the court must consider in making its decision."[21] However, 13 *Del. C.* § 722(a)'s factors should not be applied in a "narrow, inflexible manner," and the Family Court must "consider all relevant factors" as well as the eight enumerated factors in making the best interests determination.[22] In applying

---

[19] *Roca*, 842 A.2d at 1242-43; *see also Rogers v. Christina Sch. Dist.*, 73 A.3d 1, 8 (Del. 2013).
[20] *Powell*, 936 A.2d at 733.
[21] *Id.* (citing *In re Hanks*, 533 A.2d 1171, 1179 (Del. 1989)). The 13 *Del. C.* § 722(a) best interests factors are: (1) "[t]he wishes of the child's parents[;]" (2) "[t]he wishes of the child[;]" (3) the strength of child's familial and personal relationships, (4) "[t]he child's adjustment to [their] home, school and community;" (5) "[t]he mental and physical health of all individuals involved;" (6) each parent's compliance with their rights and responsibilities as to child; (7) "[e]vidence of domestic violence[;]" and (8) "[t]he criminal history of any party of any other resident" of their household. 13 *Del. C.* § 722(a).
[22] *Brock v. Dep't of Servs. for Child., Youth & Their Fams.*, 272 A.2d 781, 790 (Del. 2022).

8

these factors, the Family Court "may give weight to different factors when balancing the best interests factors."[23]

(13) Here, the Family Court's decision-making process was orderly and logical. It made detailed factual findings as to each of the eight enumerated best interests factors contained in 13 *Del. C.* § 722(a) and stated whether each factor weighed for or against termination of Mother's parental rights.[24] Additionally, it indicated the factors to which it gave greater weight in making its decision.[25] The court concluded its analysis by finding that DFS had established by clear and convincing evidence that termination was in the Child's best interests.[26] We have regularly found similar processes sufficient in the past, and do so again here.[27]

(14) Further, the Family Court's determination as to each of the best interests factors Mother challenges is supported by the record. As to factor three—the strength of the Child's familial and personal relationships—multiple DFS employees testified that the Child had an extremely close bond with her foster family. Regarding factors five and six—the health of all individuals involved and Mother's compliance with her rights and responsibilities to the Child, respectively—

---

[23] *Bower v. Dep't of Servs. for Child., Youth & Their Fams.*, 142 A.3d 505, 2016 WL 3382353, at *4 (Del. June 9, 2016) (ORDER).
[24] App. to Opening Br. at A511-16.
[25] *Id.*
[26] *Id.*
[27] *See, e.g., Powell*, 963 A.2d at 733; *Barr v. Div. of Fam. Servs.*, 974 A.2d 88, 100 (Del. 2009); *Frost v. Div. of Fam. Servs.*, 61 A.3d 1223, 2013 WL 989363, at *8 (Del. Mar. 12, 2013) (ORDER).

testimony established that Mother struggled with substance abuse while the Child was in DFS care and never obtained stable housing as required by her case plan. Finally, as to factor eight, the Family Court reviewed Mother's Delaware criminal history and found that she had several criminal convictions, including convictions for assault in 2020; promoting prison contraband (a felony) in 2012; forgery in 2012; and resisting arrest in 2011. Additionally, the court's review of Mother's record revealed she had pending criminal charges at the time of the hearing.[28]

(15) Therefore, because its findings were the product of an orderly and logical deductive process and are supported by the record, the Family Court did not abuse its discretion when it found that termination of Mother's parental rights was in the Child's best interests.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ *N. Christopher Griffiths*
Justice

---

[28] Mother's pending criminal charges included one count of Possession with Intent to Distribute a Controlled Substance, one count of Conspiracy Second Degree – Agreement to Engage in Felony Criminal Conduct, and three counts of Possession of Controlled Substance without Prescription. App. to Opening Br. at A515.